## M. F. ANDERSON V. THE STATE.

*No. 586. Decided June 1.*

1. **Murder—Corpus Delicti—Proof of by Confessions and Accomplice Testimony.**—On a trial for murder, where it has been proved that the body of deceased, or portions thereof, have been found, seen, or identified, and that the death was caused by the culpable act or agency of another, the corpus delicti is sufficiently established alone by the confessions of the accused, aided and corroborated by the testimony of an accomplice.

2. **Accomplice Witness—Corroboration of by Proof of Reputation for Veracity.**—An accomplice witness whose testimony has been attacked may be sustained by evidence of good character for truth and veracity, the same as any other witness.

3. **Impeachment of a Witness.**—A witness can not be impeached nor contradicted about matters concerning which he has not testified.

4. **Charge—Harmless Error.**—Where a charge as a whole, upon a given phase of the case, is not only the law, but as favorable to the accused as he can require, *Held,* that the fact that some part thereof, though not applicable to the case, and which is absolutely harmless, will not constitute reversible error.

5. **Charge—Alibi—Self-Defense.**—On a trial for murder, where defendant as a witness swore to an alibi, and the court failed to charge upon this defense, and the charge, as to this omission, was excepted to, *Held,* reversible error, which was intensified by the court's instructing the jury upon the law of self-defense, when there was not the slightest circumstance presenting this defense.

6. **Verdict.**—See the animadversions of the court upon the mildness of a verdict for murder of the second degree, with punishment assessed at five years in the penitentiary, where, if the defendant was guilty, he was guilty of a deliberate, fiendish assassination.

APPEAL from the Criminal District Court of Dallas. Tried below before Hon. CHARLES F. CLINT.

This appeal is from a conviction for murder of the second degree, with the punishment assessed at five years in the penitentiary.

The indictment in this case was filed on March 20, 1894, and charged appellant with the murder of one Henry Kirk, in Dallas County, on the 30th day of April, 1883, nearly eleven years prior thereto.

Henry Kirk, the deceased, disappeared in the spring of 1883; the last time he was seen he was in company with M. F. Anderson, the defendant, and James Bagley, going to the old Bagley farm, about five miles from Mesquite, in Dallas County. This old Bagley farm was some ten miles from the residence of Mrs. Brown, or Mrs. Bagley, who owned it; and the defendant Anderson and Jim Bagley lived with Mrs. Bagley, but would go down to the old Bagley farm to work a crop they were raising there.

Early in the spring of 1894, G. W. Berry, who was living on the old Bagley farm, found a human skull in the bed of a branch north of the house, and on the opposite side of the branch from the house, and about 200 yards from the house. He carried the skull to his house and washed it in a bucket, and found a bullet in the bucket after he had finished washing the skull. The finding of this skull led to further examination, and human bones and other articles were found at or near the place where the skull had been found.

After the finding of these bones, James Bagley made a statement to the effect that they were portions of the body of Henry Kirk, and that Kirk had been killed by defendant Anderson, in 1883. Anderson was indicted and tried for the crime, with the result as above stated. At the trial, James Bagley was a witness, and the principal witness for the State. He testified, substantially, that as Anderson and he were going from Mesquite to the old Bagley place they met Henry Kirk, and he got into the wagon and went home with them. He does not recollect how many days Kirk staid with them, but he was there some three or four days. This witness says: "I don't know who proposed it, but at night we all went possum hunting. We went up a branch that runs through the field about four or five hundred yards, and the dog treed something in a small tree. We went to the tree. I was on the north side, and Anderson and Kirk were on the south side. Anderson was standing just a little behind and to one side. I was looking up in the tree for the possum, and heard a pistol fire. I thought they had shot the possum and killed it. Anderson had a lantern in his hand, and it went out when the pistol fired. It was so dark for a few seconds that, until my eyes recovered from the

darkness, I couldn't see anything. The next I saw, Anderson was right at Kirk's head with a pistol, and he took his hat off. I did not know what he was going to do with the pistol there, or anything about that, but I know he pulled Kirk's hat off; and we went straight to the house, with the lantern out. At the house he struck a match and lit the lantern, and stuck the hat into the stove. Just after the pistol fired, the defendant said, 'I fixed the damn son of a bitch;' and as we were going to the house, he told me never to tell this; he told me and charged me strictly not to tell it. He said it would never be found out; and I was so scared up I didn't have much mind then about anything. I was scared up and had nothing to protect myself. It was at night-time. I saw the body the next day. The next morning Anderson said, 'We will go over to Dennis Murphy's and get a grubbing hoe, and tell him we want to grub some sprouts out of the field.' We went after the hoe, and took it and an axe with us to where Kirk's body was. He then took the grubbing hoe and hooked it over his shoulders and pulled it in a little trench, a few feet from where it laid. He then cut some little sprouts and threw them over the body. He told me to go up on the bank and watch to see if anybody was coming. He then took the axe and cut down the tree that the dog had treed the possum in the night before, and it fell across the body. We then went back to the house. He kept me right with him. Anderson then took the grubbing hoe home. The killing occurred on that little branch that ran through the field. There was a little swag that ran out from the branch just a little west, and I would say ten or fifteen steps from the branch. That is where Henry Kirk was killed. It was about four or five hundred yards from the house, as near as I can guess, in a northeasterly direction. It was on the east side of the branch; the house is on the west. There was only one branch. The tree I speak of was an oak tree, but I don't know what kind of an oak it was; it had great big leaves, and I had to look very close to see the body." The witness stated, that after the killing Anderson took four silver dollars and some small change and a watch and razor off the body. This witness did not know the cause or motive Anderson had for killing Kirk, and knew of no previous trouble between them.

Tom Meredith testified, that in 1883, after Kirk was missing, defendant Anderson told him that he (Anderson) and Jim Bagley killed Henry Kirk. This witness says: "It was at meal time when he told me this, and my mother was present. I don't know just how the talk came up, but nobody believed what Anderson said. He said they killed him for stealing a pair of socks. Anderson was always telling something, and always on himself."

R. S. Ellis also testified: "I remember the year Henry Kirk was missing. The defendant and I were coming to town one day, and he told me that he killed Henry Kirk, and pulled out a pistol, and told me that it was the gun he killed him with."

It is unnecessary to make a further statement of the case, except that defendant, as a witness, denied that he did the killing or knew anything about it; and denied that he had ever confessed to the same.

The defense in the case was an alibi.

*Miller & Williams,* for appellant.

*Mann Trice,* Assistant Attorney-General, for the State.

HURT, PRESIDING JUDGE.—Appellant was tried and convicted for the murder of Henry Kirk, the conviction being for murder of the second degree, with punishment fixed at five years in the penitentiary.

Was the corpus delicti proven? This must be done beyond a reasonable doubt. We proceed to answer the question upon the hypothesis that James Bagley was an accomplice to the crime. The corpus delicti can not be proven by the uncorroborated testimony of an accomplice. Nor can the corpus delicti be proven alone by the confession of the accused. Must it be proven independently of the confession? This is not necessary. Can the confession aid, corroborate the testimony of the accomplice, and, when both are taken together, be sufficient to prove the corpus delicti beyond a reasonable doubt? We answer, yes, if certain facts are proved—namely, the body of the deceased, or portions thereof, must be found or seen and identified, so as to establish the fact that the person charged to have been killed was dead; that the person charged to have been killed came to his death by the culpable act or agency of another person. Now, Bagley swears that he was present when appellant shot and killed Kirk; that on the next morning he assisted (by keeping watch) appellant in concealing the corpse. In this testimony we have all the facts which make up the corpus delicti—Kirk's dead body, and that death was caused by the guilty agency of the accused. But was Bagley an accomplice? Concede this; will not the law permit the prosecution to corroborate him as to this fact, as well as to any other corroborative fact? If not, why not? No reason can be given in support of the negative. We are not left in the dark upon this question. The People v. Jaehne, 103 N. Y., 182; Carroll v. The People, 136 Ill., 456; 3 Greenl. on Ev.; 1 Bish. Crim. Proc., sec. 1071. Bagley testified to facts which, if true, establish the corpus delicti beyond any sort of doubt. Was he corroborated? He was. How? By the confession of the appellant, "that he had killed Henry Kirk." Now, then, this evidence most clearly proves the corpus delicti in the manner required by statute, and there was no issue on this question except the credibility of Bagley and the witnesses who swore to the confession. Some bones, parts of old boots, a piece of lead (which was found in the skull), some wood and bark, were presented to the inspection of the jury. To this appellant excepted, because the bones had not been identified as a part of the remains of Kirk. They were found where Bagley stated the corpse

had been placed on the next day after the homicide, and there was no error in permitting the jury to inspect them.    This question is settled in this State.

By a number of witnesses, the State found that Bagley bore a good reputation for truth, etc.    This evidence was opposed by appellant, because Bagley was an accomplice to the crime; appellant contending that an accomplice can not be sustained, when attacked, by evidence of good character for truth and veracity.    We are not aware of an authority making this exception to the general rule.    An accomplice can be sustained by such proof just as any other witness.

Appellant proposed to prove by Roll Kirk, that Joseph Bagley stated to him in 1883 that deceased had made a trip with him and his brother James from Mesquite to their mother's place, about five miles southeast of Mesquite, in the spring of the year, and that, on the day subsequent to their arrival there, deceased complained of being sick, and said, if he felt well enough, he was going home; that they left the deceased lying under a tree, asleep, when they went about their work, and when they returned he was gone, and they never saw the deceased again, etc.    Joseph Bagley had not testified in regard to this matter, nor to any other fact that had the slightest bearing on the case.    There was no error in rejecting this evidence.

Objection is made to the charge of the court defining an accomplice. We have carefully read and examined the charge on this subject, and, when viewed as a whole, it is as favorable as the appellant should require.    It is law, though some part thereof is not applicable to this case, but that which is without application is absolutely harmless.

Appellant swore that he was not at the place of the homicide when deceased was killed, and had nothing whatever to do with the killing, etc., but was at another place.    The court failed to charge the jury with reference to an alibi.    For this omission in the charge appellant excepted at the time.    Ayres v. The State, 21 Texas Crim. App., 399. The charge should have been given.    Such a charge was a part of the law of the case.    Hunnicutt v. The State, 18 Texas Crim. App., 498; Rider v. The State, 26 Texas Crim. App., 334.    Furthermore, the error of the court in failing to instruct the jury with reference thereto was intensified by the court instructing the jury upon the law of self-defense. Quintana v. The State, 29 Texas Crim. App., 401.    There was not the slightest circumstance presenting this defense.    Appellant relied upon no such defense, and for the court to instruct thereon was calculated (evidently) to impress the jury with the belief that the judge believed appellant present at the homicide.

This is a remarkable case, but we have not time to discuss the facts. The Reporter will publish the facts.    But while the case is unparalleled in a great many particulars, it is not so mysterious as the verdict of the jury.    Attending this homicide, if there was a homicide, there is not one circumstance of mitigation or extenuation.    It was a deliberate, fiendish assassination, for which the perpetrator should have been

hanged. Now, what was the verdict? Murder in the second degree, with the terrible penalty of five years' confinement in the penitentiary! What a mockery on justice, if appellant be guilty! The verdict can be explained only upon the hypothesis that the jury entertained a serious doubt of the guilt of the accused, for no sane and honest jury could have believed appellant guilty beyond a reasonable doubt of this most dastardly assassination, and assess such a penalty. Our views of the facts of this case may not accord with that of the jury, but we can afford no relief, because, if Bagley and the witnesses who swear to the confession told the truth, appellant was evidently guilty. The jury, and not this court, are the judges of the credibility of the witnesses.

For failing to instruct the jury on alibi, the judgment is reversed and cause remanded.

*Reversed and remanded.*

Judges all present and concurring.