## JIM D. FOLLIS v. THE STATE.

### No. 2859.   Decided February 17, 1904.

**1.—Murder—Severance.**

One indicted for murder with an alleged accomplice has a right to a severance, and the State should not be permitted to dismiss as to the accomplice and then hold him in jail, but the severance should be granted on proper motion.

**2.—Same—Confession.**

Where there is no evidence outside of appellant's confession that deceased was killed as alleged in the indictment, with an ax, or cut with a knife, the conviction can not be sustained.

Appeal from the District Court of Henderson.   Tried below before Hon. John Y. Gooch.

Appeal from a conviction of murder in the first degree; penalty, imprisonment for life in the penitentiary.

The opinion states the case.

*Richardson & Watkins,* for appellant.—The court erred in permitting the district attorney to dismiss the case against Dock Brunson, who was separately indicted as an accomplice to the murder for which this defendant was tried, and this defendant was entitled to the evidence of said Dock Brunson after he, the said Brunson, had received a verdict of not guilty at the hands of a jury.   The said action of the said district attorney in dismissing said case being in answer to the defendant's motion for a severance and request that Dock Brunson be tried first, under the statute made and provided in such cases.   Code Crim. Proc., arts. 37, 707 709; Price v. State, 40 S. W. Rep., 596; Cameron v. State, 32 Texas Crim. Rep., 180.

The validity of the foregoing assignments depends upon whether the State or the defendants may invoke the aid of article 707, Code Crim. Proc.   An indirect defeat of a defendant's rights is a defeat nevertheless. When the Legislature enacted that one codefendant should not testify for another, they evidently surmised that his own interests would color his testimony, and a jury would be likely, and reasonably so, to reach the same conclusion.   Hence to permit the district attorney to dismiss in answer to a plea of severance, is to require a defendant to use a witness which the Legislature has said can not be trusted, for the witness will know that the grand jury can be depended on to reindict him as soon as the district attorney requests it.   If he is tried and acquitted, self-interest is eliminated, and he stands before the jury a different man. If this practice is approved the district attorney can absolutely determine the order in which codefendants shall be tried, for as before said, there is a kind of community of interest between the district attorney and the grand jury that always insures a reindictment.

*Howard Martin,* Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—This is a conviction of murder in the first degree, with the life sentence assessed as the punishment. The indictment contains two counts; first, that the homicide occurred by striking deceased with an ax; second, by striking with an ax and stabbing and cutting him with a knife. When the case was called for trial a motion for severance was made on the ground that appellant desired Dock Brunson, who had been indicted as an accomplice, should be first placed upon trial. When this application was filed the district attorney by permission of the court dismissed the case against Brunson. The bill is further explained by stating that appellant was indicted for killing Hamp McDonald, and Brunson was indicted for encouraging the act to be done, but was not present at the killing, so far as alleged or proved. Appellant then asked for a postponement or continuance of the case on account of the absence of Brunson, who was sick and unable to attend the trial. This was contested on the ground that the witness Brunson was an unpardoned convict, and appellant demurred to this contest on the ground that the court did not have the best evidence of said witness' conviction. · This is qualified by the statement that the witness Brunson was within 100 yards of the courthouse, and upon oath before the court stated he had been sick but was able to be brought into court to testify; and the court offered to have him brought before the jury, and on the trial; and it was for this reason that the motion for postponement was overruled, and the court did not hold or rule that he was incompetent or disqualified from testifying, nor that the evidence offered by the State was sufficient to show this. In fact he had been granted a pardon. Taking the case as it is presented, it may be stated when the motion for severance was filed it was overruled, a postponement or continuance was refused, and the case against Brunson dismissed and he kept in jail. The jail where Brunson was incarcerated was in the same town, the county seat, where the case was tried, and in a short distance of the courthouse. Brunson was sick, and while it is shown that he might have been brought to the courthouse, it is made to appear that he was not in a condition to undergo an examination as a witness. Without entering into a discussion of these matters, as the case will be reversed on another ground, upon another trial, if a severance is sought for Brunson, it should be granted and he first tried.

There are several very interesting questions arising in the record, but in the light we view the testimony we do not believe it justifies the conviction. The indictment charges the killing in two modes; first, by striking Hamp McDonald with an ax; and second, stabbing and cutting him with a knife. Bill Follis, the uncle of appellant, was permitted to turn State's evidence. He testified to the confession of appellant to the effect that he (appellant) killed deceased in the manner charged in the indictment. The confession of appellant was introduced from another source. The effect of this confession is that the uncle, Bill Follis, induced appellant to come from Navarro County and assist

Hamp McDonald with his ferry boat on the Trinity River. The purpose of bringing appellant to this point was to have him kill deceased. However, Bill Follis did not testify to this part of the confession. The substance of the confession is that on a certain morning appellant and deceased drove the wagon of deceased down the Trinity River, some distance, and obtained some board timber. While returning in the wagon, appellant seized an ax, struck deceased on the head, and then got his knife and stabbed him. He then threw the blocks of wood, which had blood on them, from the wagon; threw the ax out, as well as the body, and drove the wagon back to the ferry, and that evening informed his uncle Bill Follis of what had been done; and they threw the body in the river, and under the instruction of his uncle Bill Follis he threw the blocks, the ax and things of that sort that might furnish a clew to the homicide into the river. Some two weeks afterwards, he and Bill Follis went to a large raft formed in the river, where the body was found and fastened a piece of iron about five or six feet long and about two inches in diameter to the body and sunk it. The body was identified by Bill Follis and his little son, who sat on the bank of the river with a shotgun and watched the performance. Very close search was made by others for the body, the river dragged with great care, but nothing was. found. The place where, under the confession of appellant, the ax was thrown into the river, was also examined and investigated, but none of these things were ever found. One of the witnesses testified that in order to get the reward of $200 he dragged the river closely with some grab-hooks, and at the bottom of the river felt something with said grab-hooks he took to be a piece of iron, and it felt like it had some wire about it, and that his hooks pulled through something, which he intended to induce the jury to believe to have been cloth, or perhaps bark; but did not further examine as to what it was. He was seeking to find the body for the $200 reward offered for its recovery. In the confession of appellant he stated he got the watch of deceased, and found some six or more dollars in the clock on the mantel-piece, and buried the watch and money together at a certain point. The sheriff took the son of Bill Follis, went to the place designated and found the watch and the money. This is the substance of the confession. There are some other facts going to show that after the disappearance of deceased his brother began investigating and searching for and inquiring about him, and that appellant told two or three different stories as to where they might possibly find deceased; one being that he had gone to San Antonio to attend the fair. There are facts also going to show that Bill Follis and Brunson and appellant were dividing the property or handling property of deceased, after his disappearance, and that Brunson traded off a horse or two in an adjoining county. But it will be noted that there is not a fact introduced from Bill Follis, who testified that he saw the dead body in the river and helped sink it, that deceased was struck on the head with anything, with an ax, cut with a knife, or that there was a wound.

about his head or body. It was necessary, in order to obtain a conviction under the indictment, that it be proved deceased was killed with an ax, or by stabbing with a knife. Outside the confession of appellant there is not a word in the record indicating this. If the testimony of the accomplice corroborated by the confession would be sufficient to show the party was dead, the confession is not sufficient to prove the means and manner of the killing or the character of wounds. There must be evidence otherwise than the confession as proof of the means of the killing or the manner of it or cause of death. See Harris v. State, 28 Texas Crim. App., 308. Conde's case, 35 Texas Crim. Rep., 98; Anderson's case, 34 Texas Crim. Rep., 546. So far as the facts are concerned deceased may not have been killed at all, or he may have been killed by drowning, or in any other way than the means charged. There is no evidence that deceased was killed with an ax or stabbed with a knife, except the confession. This is not sufficient. Bill Follis testifies that he handled the dead body in the river and helped sink it, and yet he does not testify to any bruise upon the head or any stab with a knife.

The other questions are not discussed, as it is not necessary for a disposition of the case. For the error of the court refusing to grant the severance and try Brunson first, and for want of sufficient evidence to prove the allegations in the indictment as to the manner and means of death, the judgment is reversed and the cause remanded.

*Reversed and remanded.*