## LYMAN BOGGESS v. STATE.

No. A-7046. Opinion Filed March 8, 1930.
(287 Pac. 764.)

Ruble & Collier, Merle G. Smith, and Geo. W. Partridge, for plaintiff in error.

J. Berry King, Atty. Gen., and Ed. Crossland, Asst. Atty. Gen., for the State.

DAVENPORT, J.  The plaintiff in error, hereinafter referred to as the defendant, was by information charged jointly with Paul Powers of the crime of murder.  The defendant was tried separately and convicted of the crime of manslaughter in the first degree, and was sentenced by the court to be confined in the state penitentiary for twenty-five years.  From which judgment the defendant has appealed to this court.

The testimony on behalf of the state in this case tends to show that the state prosecuted Paul Powers in another action for the same crime alleged in this case; that Paul Powers was convicted and sentenced to twenty-five years in the penitentiary at McAlester; that Paul Powers was convicted in the May term, 1926, of the district court of Dewey county, Okla.; that about a year after Paul Powers had been confined in the state penitentiary atMcAlester, for some reason he makes statements attempting to charge the defendant in this case, Lyman Boggess, with the crime alleged to have been committed by Paul Powers, the allegation of which is that Paul Powers shot and killed a man by the name of Jim Townsend. The testimony tends to show at the time of the alleged killing Paul Powers was picking

cotton for the defendant Lyman Boggess; that Jim Townsend was indebted to Paul Powers for labor, and that on the morning of the alleged killing Paul Powers borrowed a horse from the defendant to go to the Townsend place, and stated in the presence of the defendant that it was for the purpose of collecting the debt that Townsend owed him; some time during the day, and several hours after Powers left the home of the defendant, riding one of the defendant's horses, Powers returned to the Boggess home and stated to the defendant Boggess what had occurred; the defendant then took charge of Powers and advised him to surrender to the officers of the law, and then informed the officers of the law where Powers was; and that thereafter, on the 5th day of November, 1927, the information was filed in Dewey county, Okla., on the uncorroborated testimony of Paul Powers, charging this defendant jointly with the commission of the offense originally charged against Paul Powers.

When Paul Powers was testifying on behalf of the state he was asked the following questions and gave the following answers:

"Q. Well, when you went down to the stable where the horse was, did you have any conversation?"

This question was objected to by the defendant, the objection overruled, and exceptions saved.

"A. When he handed me the gun he told me to either collect my wages or to shoot Jim Townsend.

"Q. Paul, what caused you to go down to Jim Townsend's that morning to kill him?"

The defendant objected, the objection was overruled, and the defendant saved an exception.

"A. Well, my main reason was to collect my money. That was the reason.

"Q. Did you tell him you was going down and kill Jim Townsend on Monday? A. No, sir.

"Q. Did you ever tell him you was going to kill Jim Townsend? A. No, sir.

"Q. Did Lyman ever offer you any money to kill Jim Townsend? A. No, sir.

"Q. Did he ever offer you any compensation at all to kill him of any kind? A. Offer me anything to kill him.

"Q. Yes, employ you in any way to go down there and kill him (Townsend)? A. No."

This is, in substance, the testimony of the state as to the connection defendant had with Paul Powers. Paul claims he got a pistol from the defendant to go down and collect his money, and that he used this pistol in his difficulty with Jim Townsend. The defendant claims he sold Paul the pistol, and that the selling of the pistol had nothing whatever to do with the controversy Paul Powers and Jim Townsend were having. The defendant in this case denies saying anything to Paul Powers about having trouble with Townsend, and claims he and Townsend were on good terms with each other; that he sold the pistol to Paul Powers, and that he had in any way whatever talked with the witness Paul Powers, who is jointly charged with him in the information, regarding the controversy he had had with Townsend, but states he told Paul Powers, if he was not through working for Townsend, to let his cotton picking go until he got through with Townsend.

The defendant in his twelfth assignment of error alleges that said conviction was based upon the uncorroborated testimony of an accomplice, and that there was no corroboration of the said accomplice at all as to the commission of the crime itself, and no testimony tending to connect the plaintiff in error with the commission of the

offense. An examination of the record discloses that the only testimony which tends in any way whatever to show that Townsend was shot by Paul Powers, and may have died, is the following statement:

"Well, I got on the horse and rode down there and had some difficulty with Townsend and shot him.

"Q. Killed him? A. Yes, sir."

In every criminal prosecution it devolves upon the state to prove the corpus delicti; and, second, that the crime charged was committed by the accused. Green v. State, 7 Okla. Cr. 194, 122 Pac. 1108; Marston v. State, 9 Okla. Cr. 275, 131 Pac. 716.

In Blakemore v. State, 39 Okla. Cr. 355, 265 Pac. 152, this court said:

"The corpus delicti in a criminal case cannot be established by the confession of the defendant alone. There must be independent evidence, either direct or circumstantial, of the corpus delicti before a conviction can be had."

Michie on Homicide, vol. 2, § 228 (3), p. 1121, in part is as follows:

"Neither the extrajudicial confession or admission of the defendant, nor the testimony of accomplice standing alone without corroboration is sufficient proof of the corpus delicti." Anderson v. State, 34 Tex. Cr. R. 546, 31 S. W. 673, 53 Am. St. Rep. 722; Kugadt v. State, 38 Tex. Cr. R. 681, 44 S. W. 989.

Michie on Homicide, vol. 2, § 228 (4), p. 1122, in part is as follows:

"To justify conviction in a homicide case the corpus delicti must be proved beyond a reasonable doubt." Ausmus v. People, 47 Colo. 167, 107 Pac. 204, 19 Ann. Cas. 491; Byram v. People, 49 Colo. 533, 113 Pac. 528; Zell v.

Commonwealth, 94 Pa. 258; Lott v. State, 60 Tex. Cr. R. 162, 131 S. W. 553.

"Where the homicide is denied by defendant, the burden is on the presecution to prove the killing beyond a reasonable doubt." State v. Teachey, 138 N. C. 587, 50 S. E. 232.

In this case the only effort made by the state to prove the corpus delicti was by the accomplice Paul Powers. We hold that, independent of the testimony of Paul Powers, there is no evidence of sufficient character to prove the corpus delicti.

There are other errors assigned by the defendant, but the view we take of this record it is not necessary to consider them. The case is reversed and remanded.

EDWARDS, P. J., and CHAPPELL, J., concur.