PROCTOR McDONALD v. STATE.

No. A.-8426.   Oct. 27, 1932.

Rehearing Denied Nov. 18, 1932.

(15 Pac. [2d] 1092.)

162

Marshall & Cobb, for plaintiff in error.

J. Berry King, Atty. Gen., and Smith C. Matson, Asst. Atty. Gen., for the State.

EDWARDS, J. The plaintiff in error, hereinafter called defendant, was convicted in the district court of Creek county of murder and his punishment fixed at death.

There is little dispute as to the essential facts. At the time charged, defendant and one Elmer Higgins planned to hi-jack and rob M. D. Butler, a druggist at Oilton. They drove in an automobile from Red Fork, about 60 miles, to near Oilton, where defendant stated they picked up a third person, one Walter, whose last name he does not know. They then inspected the surroundings and fortified themselves by drinking whisky; then defendant armed with a .45 pistol, and Higgins with a sawed-off shotgun, stationed themselves in the Butler garage and "Walter," according to defendant's testimony was in wait about three miles away with a car to assist in their escape after the robbery. The plan was that, if Mrs. Butler should be with her husband, defendant was to take care of her while Higgins robbed Butler. About 11 p. m., Butler drove into the garage; his wife was in the right-hand seat, and their adopted son, Raymond Butler, about 8 years old, was between them. Mrs. Butler got out of the car and defendant immediately seized her by the head,

took her purse, and forced her to the rear of the car. She resisted and was thrown to the floor and defendant fired one shot which struck the concrete and slightly wounded her. Higgins fired the sawed-off shotgun at Butler, but in the darkness missed him and struck the steering wheel of the car. He fired again, and the second shot killed the boy, Raymond Butler. Butler then fired a pistol and killed Higgins. Defendant fled and about a half block from the garage was fired at by some third person and wounded. He was a fugitive for some time, but on account of his wound went to a hospital at Tulsa, where he was apprehended. After his arrest, he made a signed confession and as a witness in this trial stated the facts substantially as set out. While a plea of not guilty was entered and the case fully tried, his testimony clearly established his guilt of an atrocious murder while engaged in the commission of a felony.

The first contention argued is that the trial court permitted the county attorney on voir dire examination to pledge the jurors to a verdict imposing the death penalty. In examining the jurors on voir dire, they were asked, in substance, if they entertained conscientious scruples against the death penalty and if they could without violence to their conscience assess such penalty if convinced beyond a reasonable doubt of defendant's guilt and should believe from the evidence that such penalty should be imposed. In two instances prospective jurors were asked if they "could and would" under such circumstances vote for the death penalty without violence to their conscience. These questions were objected to, and the objection was overruled. The question in those two instances should not have been asked. It was highly improper. We condemn the asking as to what a juror would do under any particular state of facts. The trial court should not per-

mit it, and should have sustained the objection to the questions propounded to these two jurors. Manning v. State, 7 Okla. Cr. 367, 123 Pac. 1029; Jones v. State, 20 Okla. Cr. 154, 201 Pac. 664; State v. Huffman, 86 Ohio St. 229, 99 N. E. 295, Ann. Cas. 1913D, 677; Com. v. Van Horn, 188 Pa. 143, 41 A. 469. The objection made is that the question is improper and incorporating an improper hypothesis. One juror, in substance, stated to defendant's counsel that he felt committed by his answer to the county attorney. Thereupon the court instructed the juror that he was under no obligation to agree with the prosecution, but was free to act on the law and the evidence upon his conscience and oath. At one time during the deliberations the jury came in and a juror asked to have the voir dire examination read; the court then instructed the jury the questions were asked merely to determine the qualifications and competency of the jurors and after the jury had been sworn the questions were immaterial.

In a capital case, in ascertaining whether a juror entertains conscientious scruples against the death penalty, he may be asked if in a case where the law and the evidence warrants he could, without doing violence to his conscience, agree to a verdict for the death penalty. When the prosecution goes beyond that, the court should limit the question and particularly so when objection is made. But counsel for a defendant may not rest on a mere objection and exception; if he is of the opinion that by such question and answer a juror is biased, or prejudiced or not fair and he is not satisfied with him, he must challenge for cause if of the opinion ground for such challenge exists, and, if not, he must exercise the right given him by statute to exclude the juror by peremptory challenge. If counsel believes any juror was pledged to return a verdict imposing the death penalty, under the circumstances

named, he should have purged the jury by challenge. He cannot speculate on the result of the jury's verdict by consenting that the juror sit on the panel, and, if the verdict is adverse, then assert he is disqualified. Of the nine peremptory challenges allowed defendant, he exercised only one and waived as to the other eight. There is no difference, in principle, in agreeing that a juror who is disqualified by reason of bias or prejudice on this ground may serve on the panel than in agreeing where he is disqualified on any other ground. He cannot be heard now to say that known disqualified jurors sat on the panel. Cooper v. State, 27 Okla. Cr. 278, 226 Pac. 1066; Wheatcraft v. State, 32 Okla. Cr. 379, 240 Pac. 753.

Next it is argued that the court erred in not permitting defendant to testify he had no intention of killing or harming any one and in instructing the jury that a premeditated design to kill was immaterial. It is conceded that a premeditated design to effect death is not an element of a murder committed by one engaged in the commission of a felony. Ray v. State, 10 Okla. Cr. 403, 406, 136 Pac. 980; Carle v. State, 34 Okla. Cr. 24, 244 Pac. 833; Lovett v. State, 51 Okla. Cr. 324, 1 Pac. (2d) 800. The refusal to permit defendant to testify to his state of mind is based on the following excerpts from the record:

"Q. Was there ever discussed between you and Higgins, between you and Walt, or the three of you together, any plan to shoot or to kill or wound anybody there? Mr. Cunningham: We object— A. (Interrupting) No, sir. Mr. Cunningham:—to that, as incompetent, irrelevant, and immaterial. The Court: Objection sustained. Mr. Cobb: Exception. Mr. Marshall: In behalf of the defendant, at this time we offer to show that at no time during the entire course of the transaction, nor before, had anything ever been said or any discussion had or any

plan reached between the defendant and the said Higgins
by which anyone was to be hurt, or anyone was to be
killed, or any violence involving the usage of firearms per-
petrated.   Mr. Cunningham: To which we object as be-
ing incompetent, irrelevant and immaterial.   The Court:
Objection sustained and the offer is denied.   By Mr. Cobb:
Q. Were you scared at the time?   A. Yes, sir.   Mr. Cun-
ningham: We object to that, as incompetent, irrelevant
and immaterial.   The Court: Objection sustained.   Mr.
Marshall: Exception.   Mr. Cobb: Q. Were you excited
at the time?   Mr. Cunningham: We object to that.   It
doesn't make any difference whether he was scared or
excited or not.   The Court: Objection sustained.   Mr.
Cobb: Touching his ability to answer who fired the first
shot. The Court: Objection sustained.   Mr. Marshall: Ex-
ception.   Mr. Marshall: The defendant offers to prove at
this time, by himself as a witness,   that   on   the   occasion
described in the last few preceding questions and answers,
that the defendant was excited and was frightened, and
that he did not know then and does not know now whether
or not he ever fired the gun which he had; that to the
best of his recollection and memory,   he   did   not.   The
Court:   The offer is denied.   * * *"

The first part of these questions and answers might
well have been excluded as a repetition since the witness
had just testified to the forming of the plan to rob Butler
and to the circumstances of the robbery, thus:

"Q. You stated you went to Butler's garage.   What
did you do there?   A. Well, we got in the garage and
stayed behind the car until they came in.   When   they
came in, we walked out from behind the car.   When she
got out of the car, I taken hold of her.   Higgins went
around by the side of me and there was shots fired.   I
don't know how many, and when I seen Higgins fall, I
turned and ran.   Q. What was the plan, if you had any,
between you, Higgins and Walt, that you discussed and
talked over before you went in there, as to how you would
conduct or pull off the robbery, what each of you was to
do?   A. I was told—I didn't know whether Mrs. Butler

would be along or not—if she was, I was to take her and Walter was to get—Mr. Higgins was to get Mr. Butler. Q. Was there anything said about shooting anybody or killing anybody? A. No, sir. Q. What kind of gun did you have? A. .45. Q. What kind of gun did Higgins have? A. A shot-gun."

And he further testified he could not say if he fired the first shot, that he was scared at the time, and, if he fired the revolver, he did not know anything about it and did not examine later to see if there was an empty cartridge in the gun.

Murder is defined by the third subdivision of section 2216, St. 1931, as follows:

"Third. When perpetrated without any design to effect death by a person engaged in the commission of any felony."

It is not disputed defendant and Higgins were acting together in the commission of a felony, and that in law the act and deed of Higgins was the act and deed of defendant. Counsel states the evidence and offer of proof excluded was admissible only in mitigation and did not affect the question of defendant's guilt or innocence of murder. By the very terms of the statute, the killing of a human being by another while engaged in a felony is murder although done without any design to effect death. The courts construing similar statutes hold that a homicide under such circumstances although accidental is none the less murder. Com. v. Lessner, 274 Pa. 108, 118 A. 24; Com. v. McManus, 282 Pa. 25, 127 A. 316; People v. Milton, 145 Cal. 169, 78 Pac. 549; People v. Raber, 168 Cal. 316, 143 Pac. 317.

It may be well to inquire what mitigates a murder by one engaged in the commission of a robbery. If Higgins were on trial, what would be the mitigation for him

to say that "I fired this shotgun into the car at short range and killed this boy but I did not intend to kill him" in the face of a statute which defines such homicide to be murder although without design to effect death. It is quite likely defendant and his companions would have preferred to perpetrate the robbery without killing any one, but the testimony even of the defendant clearly shows they were prepared to kill on the slightest apprehension of resistance. Such a crime could be perpetrated only by one with an abandoned and malignant heart, and the evidence offered does not in any degree mitigate the crime.

The second part of this assignment complains of instruction 10. This instruction does not attempt to limit the application of the evidence for any purpose, but is a definition and explanation to the jury of murder as defined in subdivision 3 of section 2216, St. 1931. In substance it tells the jury that, when a homicide is perpetrated by a person engaged in the commission of a felony, although without a premeditated design to effect the death of any particular individual, on the trial the question as to whether or not defendant had a premeditated design to kill the deceased is immaterial, that under such circumstances the design is presumed as a matter of law from the fact of the killing, and, if they find from the evidence beyond a reasonable doubt that, defendant acting with one Elmer Higgins, and while so acting said Higgins shot and killed Raymond Butler, defendant in that event would be guilty of murder. The court was simply attempting to tell the jury that, where two persons acted together in the commission of a robbery, and one of them, although without a premeditated design to kill, did shoot and kill any person, the other would be guilty of murder, and that intent to kill was not an ingredient of the offense. Possibly the law might have been better stated, but we per-

ceive no material error in it. Counsel, however, contend the instruction does not go far enough. That it is correct so far as it goes, but is incomplete, and the court should have added that a premeditated design was immaterial and not to be considered by the jury, adding the words as "affecting the guilt or innocence of the defendant." The exception to the instruction is general. Counsel did not ask for any additional or a more specific instruction covering the matter which it is here complained should have been embodied in it. It was not suggested to the court that this instruction might be construed as limiting the application of the evidence as mitigation. We think the instruction does not have the effect here argued and was not misleading. If counsel thought so, they should have made a request for a more specific instruction. Fitzsimmons v. State, 14 Okla. Cr. 80, 166 Pac. 453; Merriott v. State, 18 Okla. Cr. 247, 194 Pac. 263. Upon a careful consideration of the whole case, we see no reason why this court should interfere with the judgment.

The case is affirmed.

The original time for the execution having passed, owing to the pendency of this appeal, it is considered, ordered, and adjudged by this court that the judgment and sentence of the district court of Creek county be carried out by the electrocution of the defendant on Friday, January 6, 1933.

DAVENPORT, P. J., and CHAPPELL, J., concur.