## SIMMONS v. STATE.

No. A-11339.   March 21, 1951.

(229 P. 2d 615.)

Ozmun & Fullerton,. Lawton, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Lewis A. Wallace, Asst. Atty. Gen., for defendant in error.

BRETT, P. J. The plaintiff in error, Robert Chase Simmons, defendant below, was charged by information in the district court of Jackson county with the crime of burglary. It was alleged in substance that on or about December 23, 1948, in Altus, Oklahoma, the defendant and D. J. Hill and George Hill broke in to the C. R. Anthony store, located at 100 N. Main, and stole 18 men's dress suits, 20 men's leather coats, 4 men's topcoats, 4 men's wool mackinaws and 2 men's wool jackets, with the intent to deprive C. R. Anthony, the owner thereof, of said personal property and to convert the same to their own use and benefit. The defendant was tried by a jury, convicted, and his punishment fixed at 4 years in the State Penitentiary, and judgment and sentence was entered accordingly.

The evidence of the state in chief disclosed that on the morning of December 23, 1948, the C. R. Anthony Clothing store in Altus was burglarized in the early morning at about 1:00 a.m. That Mr. Mabry, manager of the C. R. Anthony's store, opened the store at the usual time of day, and found several racks of men's wearing apparel were practically empty. An investigation disclosed that a glass in the door in the back of the store on the alley had been broken and through that opening the burglars gained admittance into the store. The state's competent evidence further shows that the merchandise was taken to Lawton and first divided between the parties to the crime, that later the defendant, Simmons, purchased the property from the other two parties for $50 each, or a total of $100, and then stored it at the defendant Simmons' home in Lawton.

The record discloses that on January 6, 1949, the defendant was working in Altus as a plumber on a hospital building, as he had been on December 23rd, the day of the crime. While the defendant was in Altus, the record shows the then sheriff of Comanche county, Mr. Hale, and one of his deputies, Mr. Overton, went to the home of the defendant in Lawton and invaded the privacy of his home and asked Mrs. Simmons, defendant's wife, for a certain leather jacket, apparently taken in the burglary, which she produced. The sheriff of Comanche county then left and notified Sheriff Turner of Jackson county, who thereupon placed the defendant, Simmons, under arrest in Altus, and placed him in the Jackson county jail. After the arrest of the defendant, the record shows, the Jackson county sheriff advised the Comanche county sheriff that the defendant had been taken into custody, and placed in the Jackson county jail, then Sheriff Hale, together with 2 of his deputies, Mr. Overton and Mr. Dyer, thereupon returned to the defendant's home in Lawton, Oklahoma, without a search warrant, and searched the defendant's home in his absence, but as they testified with Mrs. Simmons' permission, she saying it was all right though the sheriff had no warrant so to do. In this second search they found packed in a cotton sack hid in the attic the stolen merchandise, which was thereafter identified by Mr. Mabry as being the merchandise taken from the C. R. Anthony store in Altus. The officers took the merchandise and delivered it to Mr. Mabry.

The record further shows that thereafter the defendant in an oral confession made to Sheriff Turner admitted his participation in the burglary and later made a written confession as follows, to wit:

"I, Robert Chase Simmons, make this statement of my own free will and accord without being promised anything of value and without being threatened.

"That on December 23rd, 1948, about one o'clock A.M., D. J. Hill, George Hill and myself entered the C. R. Anthony Co. store in Altus, Oklahoma, by breaking a glass in the back door of the store and crawling through the opening. D. J. Hill broke the glass in the door by hitting it with his elbow. D. J. Hill entered the store first, George Hill was second and I followed George. We made two trips into the store and carried out each trip all of the suits and jackets that we could carry. We also took three top coats. We then placed the stolen articles in George Hills car which is a 1939 model Ford tudor. We then went to Lawton. When we got to Lawton we stored the above mentioned goods in the home of George and D. J. Hill which is also the home of the father and mother of George and D. J. Hill. Several days later Geo. Hill and D. J. Hill came to me and wanted to sell their part of the stolen goods, they said that someone was trying to steal it and it would have to be moved from the house, in which it was then in. It seems that they had moved the articles from the place where we had left it to Jody Hill's residence in Lawton, Oklahoma. D. J. and George Hill offered to sell me their part of the stolen goods for $50 each so I borrowed the money and gave them each $50. Then we three moved the goods to my residence and they remained there until found by the officers on January 6th, 1949."

The record discloses that the trial court excluded the jury and determined the voluntary nature of the confession and then recalled the jury which heard anew the evidence in relation to the taking of the confession. Schrack v. State, 84 Okla. Cr. 260, 181 P. 2d 270. An examination thereof shows the confession to have been free and voluntarily made, and properly admitted in evidence. The defendant does not question the record on the admissibility of the confession, nor do we. In substance, the foregoing constitutes the state's case in chief.

But prior to the trial on the merits, the defendant filed his motion to suppress the evidence of Sheriff Hale, Mr. Overton and Mr. Dyer, in relation to the searches and seizures. The trial court sustained the motion to suppress as to the first search made by Mr. Hale and Mr. Overton when they demanded and

seized the leather jacket without the aid of a search warrant and not incident to a lawful arrest. The trial court sustained the motion to suppress the evidence obtained in the first search and seizure on the theory that Mrs. Simmons could not waive her husband's right of immunity from an unlawful search and seizure of her husband's home. On this premise he was eminently correct. See Carignano v. State, 31 Okla. Cr. 228, 238 P. 507, wherein it was said:

"The constitutional rights of a person to be secure against unreasonable searches and seizures and self-crimination were not waived when his wife in his absence failed to object to officers making a search of his premises under authority of an illegal search warrant."

See also Amos v. United States, 255 U.S. 313, 41 S. Ct. 266, 25 L. Ed. 654; Cofer v. United States, 5 Cir., 37 F.2d 677, citing Amos v. United States, supra. This holding is in keeping with the weight of authorities. 47 Am. Jr. § 72, page 549, Note 17: the right to demand a search warrant is a personal right given to husband and wife alike under the Constitution which cannot be waived by either in absence of the other. In this conclusion the trial court ruled properly. But as to the second search and seizure of the merchandise in the cotton sack found in the attic of the defendant's home in Lawton, effected after the defendant's arrest and imprisonment in Altus, the trial court overruled the defendant's motion to suppress and permitted the introduction of evidence relative to the fruits of that search (of the defendant's home in Lawton) and seizure on the ground it was incident to a lawful arrest. In overruling the motion to suppress the evidence obtained in the second search and seizure the trial court committed error. We feel compelled to observe that, in the case at bar, the officers could have arrested the defendant without the first unlawful invasion of the defendant's home, for as it was said in Newton v. State, 61 Okla. Cr. 237, 71 P. 2d 122, 123:

"A peace officer may arrest one on a well-founded suspicion for the commission of a felony, where a felony has in fact been committed, and the officer has reasonable grounds to believe that the person arrested was the perpetrator."

Here a felony had been committed, and the suspicion was well founded that the defendant committed it. In other words, it appears the suspicion herein was predicated upon reasonable grounds that the defendant was the perpetrator of the crime. Incident to the lawful arrest of the defendant, the officers had the right to search the person and the immediate surroundings of the defendant. In Wallace v. State, 42 Okla. Cr. 143, 275 P. 354, 355, it was said:

"An objection to the evidence of the search was interposed and overruled. Where an arrest is made at a residence, a legal search without a warrant may be made as an incident thereto. Here the evidence indicates that the arrest was made in the road or street in front of the residence, where the automobile of the witness was parked. The right of search in case of arrest is of the person and immediate surroundings of the arrested person. It does not carry with it the right to search buildings and places other than the immediate surroundings of the person arrested. In this case, since the arrest did not take place in the residence and the whiskey purchased was not brought from the residence, we think the arrest did not carry with it the right to search the residence house. The Supreme Court of the United States, in the case of Agnello et al. v. United States, 1925, 269 U.S. 20, 46 S.Ct. 4, 70 L. Ed. 145, 51 A.L.R. 409 under a somewhat similar state of facts, said:

" 'While the question has never been directly decided by this court, it has always been assumed that one's house cannot lawfully be searched without a search warrant, except as an incident to a lawful arrest therein. Boyd v. United States, 116 U.S. 616, 624, et seq., 630, 6 S. Ct. 524, 29 L. Ed. 746; Weeks v. United States, supra (232 U.S. 383, 392, 393, 34 S. Ct. 341, 58 L. Ed. 652, L. R. A. 1915B, 834, Ann. Cas. 1915C, 1177); Silverthorne Lumber Co. v. United States, supra (251 U. S. 385, 391, 40 S. Ct. 182, 64 L. Ed. 319); Gouled v. United States,

255 U. S. 298, 308, 41 S. Ct. 261, 65 L. Ed. 647. The protection of the Fourth Amendment extends to all equally—to those justly suspected or accused, as well as to the innocent. The search of a private dwelling without a warrant is in itself unreasonable and abhorrent to our laws. Congress has never passed an act purporting to authorize the search of a house without a warrant. On the other hand, special limitations have been set about the obtaining of search warrants for that purpose. Thus, the National Prohibition Act, approved, October 28, 1919, c. 85, tit. 2 § 25, 41 St. 305, 315 (Comp. St. Ann. Supp. 1923, § 10138 ½m [27 U. S. C. A. § 39]), provides that no search warrant shall issue to search any private dwelling occupied as such unless it is being used for the unlawful sale of intoxicating liquor or is in part used for business purposes, such as store, shop, saloon, restaurant, hotel, or boarding house. And later, to the end that government employees without a warrant shall not invade the homes of the people and violate the privacies of life, Congress made it a criminal offense, punishable by heavy penalties, for any officer, agent or employee of the United States engaged in the enforcement of any law to search a private dwelling house without a warrant directing such search. Act Nov. 23, 1921, c. 134, § 6, 42 Stat. 222, 223 (Com. St. Ann. Supp. 1923, § 10184A [18 U. S. C. A. § 53]). Safeguards similar to the Fourth Amendment are deemed necessary and have been provided in the constitution or laws of every state of the Union.' "

See, also, Dean v. State, 37 Okla. Cr. 396, 258 P. 812; United States v. Setaro, D. C., 37 F. 2d 134; N. D. C. Comm. Cornelius on Searches and Seizures (2d Ed.) pp. 177, 178, 179, § 50, scope of search incident to arrest. It is therefore apparent that the search of the defendant's home in Lawton without a warrant while he was incarcerated in Altus was clearly unauthorized and the testimony in relation to the evidence thus obtained inadmissible. There was positively no excuse for the officers' failure to procure a search warrant on either search of the defendant's home. They had ample time so to do. Such practices deserve the most severe condemnation. See Walker v. State, 89 Okla. Cr. 66, 205 P. 2d 335, wherein a search was conducted without a warrant of Walker's apartment after his arrest and imprisonment. Therein it was held the admission of evidence thus obtained was error.

The state relies on Herren v. State, 74 Okla. Cr. 432, 127 P. 2d 384, 386, wherein a search was made of the defendant's home after he was arrested and confined in jail. But this case is not in point herein for the reason as therein stated:

"Moreover, under the testimony of the officers, the defendant waived his immunity to this search by telling them to go ahead and search his home and filling station all they pleased."

This court also observed in the Herren case that exclusive of the evidence obtained under the search and seizure was sufficient to sustain the conviction. This error, however, loses its substance when measured by the defendant's confession which the trial court permitted in evidence and which established the defendant's guilt as one of the perpetrators of the crime. This brings us to the defendant's second contention.

In the defendant's second contention he complains as to the error of the trial court in overruling defendant's motion for an instructed verdict and demurrer to the state's evidence. He contends that in addition to the confession of the defendant there must be sufficient evidence exclusive of the confession to make a prima facie case. In other words, he says there must be corroboration of the confession. The authorities cited by the defendant do not support this contention. Boggess v. State, 46 Okla. Cr. 283, 287 P. 764; Lake v. State, 59 Okla. Cr. 200, 57 P.2d 1199. It is apparent that the defendant is laboring under a misapprehension of the law. The law is that proof of the commission of the

crime cannot be made by the defendant's confession standing alone. But when the corpus delicti or fact of the commission of a crime has been made and only the question of identity of the perpetrator remains to be established, proof of a voluntary confession of one charge is sufficient to warrant a conviction. The most recent case so holding is Osborn v. State, 86 Okla. Cr. 259, 194 P. 2d 176, 178. In syllabus 5 it was said:

"Where the corpus delicti is established by independent evidence, a conviction based upon defendant's voluntary confession is warranted."

In the body of the opinion it was said:

"After the state had rested, the defendant interposed a demurrer to the evidence, which was overruled. The defendant then rested without offering any evidence in his own behalf.

"In Gorum v. State, 60 Okla. Cr. 248, 63 P. 2d 765, it is held:

" 'In every criminal prosecution it devolves upon the state to prove, first, the corpus delicti; second, that the crime charged was committed by the accused.

" 'The "corpus delicti" means, when applied to any particular offense, the actual commission by some one of the particular offense charged.

" 'The corpus delicti may be established without showing that the offense charged was committed by the accused.

" 'An extrajudicial confession of the defendant is not sufficient to warrant his conviction without additional proof that the crime charged has been committed. There must be, in addition to the confession, proof of the corpus delicti, and, where the corpus delicti is established by independent evidence, a conviction based upon the defendant's voluntary confession is warranted.'

"In Edwards v. State, 46 Okla. Cr. 77, 288 P. 359, this Court stated:

" 'Where a dead body is found with marks of violence upon it, or other circumstances that indicate that deceased came to his or her death by unnatural or violent means, proof of such fact, independent of defendant's confession, establishes the corpus delicti in a murder case.

" 'The judgment in a murder case will not be reversed on appeal as not sustained by the evidence, unless there is no substantial evidence tending to show the guilt of the defendant, or unless it fails so far to support the verdict that the necessary inference is that the jury acted from partiality or prejudice, or was controlled by undue influence.

\* \* \*

" 'In a trial for murder, the question of whether the alleged confession of the defendant was voluntary was for the jury. Where the voluntary nature of the confession was submitted to the jury under proper instructions, a verdict against the defendant is conclusive on the issue.

" 'An extrajudicial confession of the defendant is not 'sufficient to warrant his conviction without additional proof that the crime charged has been committed. There must be, in addition to the confession, proof of the corpus delicti, and, where the corpus delicti is established by independent evidence, a conviction based upon the defendant's voluntary confession is warranted.' "

"See, also, Brown v. State, 9 Okla. Cr. 382, 132 P. 359; Choate v. State, 12 Okla. Cr. 560, 160 P. 34, L.R.A. 1917A, 1287.

"In Choate v. State, supra, this Court stated:

" 'A conviction cannot be had upon a defendant's extrajudicial admissions alone, unless the state proves in some way the corpus delicti, independent of the defendant's admission. Direct and positive proof is not essential to establish the

corpus delicti, but it may be proved by circumstantial evidence. And when it is proved by circumstantial evidence, the question should be submitted to the jury along with the other questions of fact in the case, as to whether or not the state has established the corpus delicti beyond a reasonable doubt.

" '(a) The danger which this rule is supposed to guard against is greatly exaggerated in common thought. Yet there are rare instances of morbid minds that need to be protected by this rule against their own perversity and morbid imagination.

" '(b) To prove the corpus delicti is a simple matter. If a dead body is found with marks of violence upon it, or other circumstances that indicate that deceased came to his or her death by unnatural or violent means, proof of such fact, independent of defendant's confession, establishes the corpus delicti in a murder case. * * *'

"In the instant case, the State established by evidence independent of confession of the defendant that the deceased came to his death by reason of a gunshot wound inflicted upon him by a 22 Caliber bullet, the night of March 18, 1929. In accordance with the authorities above cited where the corpus delicti has been established by independent evidence, then the confession of the defendant to having committed the crime is sufficient to sustain a judgment of conviction. Under the confession of the accused, he and Buchanan schemed together to commit the felony of robbery. During the robbery, the deceased was shot. The defendant as well as Buchanan, is guilty of felonious homicide. McDonald v. State, 54 Okla. Cr. 161, 15 P. 2d 1092."

An even later case is that of Ward v. State, 92 Okla. Cr. 143, 222 P. 2d 173, 174, 175, wherein it was said:

"Counsel for defendant contend: 'It is noted at once that not one witness connected the defendant Ward with the commission of this alleged burglary, and that the only evidence that tends to connect him with it is the testimony of the officers to the effect that he himself made an extra-judicial confession. Therefore, 1. There was no corpus delicti established, and no corroboration of defendant's alleged extra-judicial confession.'

"The legal question then, is: Where a prisoner voluntarily, and without threats or promises, confesses to the commission of a crime, what is necessary additionally, if anything, to support a conviction?

"The answer is simply that there must be independent proof of the corpus delicti, or in plain English, the actual commission by someone of the particular offense charged, and it may be established without showing that the offense in question was committed by the accused, and it may be established by circumstantial evidence. And where the actual commission of the offense is established by independent evidence, then a conviction based upon the defendant's voluntary confession is warranted. Gorum v. State, 60 Okla. Cr. 248, 63 P. 2d 765; Hopkins v. State, 75 Okla. Cr. 268, 130 P. 2d 543; and Long v. State, 77 Okla. Cr. 174, 140 P. 2d 600. Thus, it is not necessary that the confession be otherwise corroborated."

Such is the contention in the case at bar, and such is the law applicable thereto. Here the corpus delicti of the crime was established by the proof offered by Mr. Mabry, manager of the C. R. Anthony store in Altus. He testified clearly and convincingly that the crime of burglary had been committed by some one by unlawfully breaking and entering, and stealing and carrying away merchandise of C. R. Anthony & Company. This being true the defendant's confession then became competent as to identity and being corroborative of Mr. Mabry's evidence establishing the corpus delicti certainly made out a prima facie case for the jury. There was then evidence of the commission of the crime, independent of the defendant's voluntary confession, and, as said hereinbefore, evidence of the commission of the crime, and the defendant's voluntary confession, was sufficient to sustain a verdict of guilty. It therefore becomes apparent that the defendant's

contention as to the insufficiency of the evidence is without merit. We are further of the opinion that exclusive of the testimony of the officers as to what they seized in the two unlawful searches, the evidence was sufficient to withstand a demurrer thereto. The trial court therefore correctly ruled in overruling the defendant's demurrer to the evidence. Under the conditions herewith presented, we further believe that on the question of the defendant's guilt the admission of the evidence of the testimony as to the search and seizure, while error, was not that kind of error that warrants a reversal. It was merely more of the same, testified to by Mr. Mabry and admitted by the defendant to be true in defendant's confession. In this connection we have repeatedly held that in considering the sufficiency of the evidence, the function of this court is limited to ascertaining whether there is a basis in the evidence on which the jury could reasonably conclude the accused is guilty as charged. Tucker v. State, 89 Okla. Cr. 30, 204 P. 2d 540. We believe that if tried many times on the competent evidence of Mr. Mabry and the defendant's confession, the result would be a verdict of guilty. Under these conditions, while the record contains errors, it presents no such error as cannot be corrected herein, under the provisions of Title 22, § 1066, modification of judgments; and § 1068 as to harmless error.

The defendant's final contention is that the trial court erred in not sustaining his motion for a mistrial incident to the county attorney's testimony, the pertinent part of which is as follows, to wit:

"By Mr. Criswell:

" * * * In regard to the charge Mr. Ozmun asked about, there was not anything in regard to any other charges being filed against his wife, or on him or anybody in my presence. On the 23rd day of July, 1949, after I had a report from the F. B. I. Bureau * * *."

To this objection was made and sustained, and thereafter motion to declare a mistrial was made and overruled. The mention of the report from the F. B. I. within itself was not reversible error, for we are not permitted to presume that the F. B. I. report as to the defendant would be bad. It might have been good. If it had been bad the introduction of evidence in regard thereto would have constituted reversible error, the defendant not having taken the stand in his own behalf or otherwise having made his character and reputation an issue. It appears the state was therefore saved the embarrassment of reversible error only by the premature objection of counsel for the defendant. Apparently, the county attorney was in the act of committing reversible error and was precluded from doing so only by the ruling of the court. But even in aggravated cases, where the evidence of guilt is clear and conclusive as it is herein, we have held such error not to be reversible. Tucker v. State, supra; Harris v. State, 88 Okla. Cr. 422, 204 P. 2d 305, 8 A.L.R. 2d 1006. Hence this contention is without merit. Notwithstanding the conclusions hereinbefore set forth, we feel compelled to modify the sentence herein imposed. The errors while not affecting the jury's verdict of the defendant's guilt may have influenced them in inflicting a greater penalty than would have been imposed otherwise. Therefore, giving the defendant the benefit of the doubt in this regard, we are of the opinion that the judgment and sentence herein should be and the same is hereby modified from 4 years to a term of 3 years and as so modified is affirmed.

JONES and POWELL, JJ., concur.