## Asa Coleman v. The Territory of Oklahoma.

1. CRIMINAL LAW—*Statute of Limitation—Inhabitant of, or Usually Resident—Meaning of.* The clause in the exception in the statute of limitations, § 4953, Statutes of Oklahoma, 1893, reading, "and no time during which the defendant is not an inhabitant of or usually resident within the territory is part of the limitation," means, that no time during which the defendant did not have a fixed, permanent and established home where his personal presence might reasonably be known, would constitute any part of the period of limitation.

2. CRIMINAL LAW—*Statute of Limitation—Inhabitancy and Residence—Proof of—Burden Upon Whom—Degree of.* The defense of the statute of limitation is an extrinsic, exculpatory defense in the nature of confession and avoidance. It does not traverse any of the material elements of the crime charged; and where an indictment was not found until more than four years after the commission of the crime, and the territory had established that, immediately after the commission of the crime, the defendant fled, the burden was not upon the territory to establish, by evidence, to the satisfaction of the jury, beyond a reasonable doubt, that the defendant, during the period of the statute of limitation, was not an inhabitant or usually resident within the territory; but the burden was upon the defendant to satisfy the jury, by the preponderence of evidence, that during said time he was an inhabitant and usually resident within the territory. Where, in a criminal case, the defense is extrinsic, not traversing any of the material elements of the defense and the facts upon which such defense is based, are peculiarly within the knowledge of the defendant, he will be held to establish those facts to the satisfaction of the jury, by the preponderence of the evidence, before he is entitled to an acquittal.

*Error from the District Court of Oklahoma County.*

At the February, 1896, term of the district court of Oklahoma county, plaintiff in error, Asa Coleman, was tried and found guilty and sentenced for the crime of forgery. From such judgment he appealed.

*Hays & Jenkins*, for plaintiff in error.

*C. A. Galbraith, Attorney General*, for defendant in error.

The opinion of the court was delivered by

TARSNEY, J.: Plaintiff in error brings this case here and asks a reversal on numerous assignments of error.

The only questions presented in this court requiring our consideration or attention, are those presented by the action of the court below, in overruling a demurrer to the indictment, and upon the instructions, as to the law of the case, given to the jury.

At the November, 1895, term of said court, the defendant was indicted under the second paragraph of § 2356, of the Statutes of Oklahoma, which said paragraph reads as follows:

"Second. Any instrument of writing being, or purporting to be, the act of another, by which any pecuniary demand or obligation is, or purports to be, created, increased, discharged or diminished, or by which any rights of property whatever, are, or purport to be, transferred, conveyed, discharged, diminished or in any manner affected, the punishment of which is not hereinbefore prescribed, by which false making, altering, forging or counterfeiting, any person may be affected, bound or in any way injured in his person or property, is guilty of a forgery in the second degree."

The indictment, in due and proper form charged, substantially, that on the fifteenth day of April, 1891, one George A. Strauss, had pending in the United States

land office, a contest against the homestead entry of the defendant on certain lands in Oklahoma county, seeking to procure a cancellation of such homestead entry, and to obtain for himself, under the laws of the United States, the preference right to make entry of said land; that the defendant did, on said fifteenth day of April, 1891, cause and procure one John Doe to personate the said Strauss, and falsely make, forge and counterfeit and file in said land office an instrument in writing as follows:

"Before the United States Land office, Oklahoma City, O. T., April 15, 1891.

George  A.  Strauss ⎞
   vs.   ⎟  Involving  the S. W. $\frac{1}{4}$ of Sec. 25,
 Asa Coleman. ⎠  Town. 12, R. 3, W.

MOTION TO DISMISS.

Comes now the plaintiff in the above entitled cause, George A. Strauss, and moves the honorable register and receiver to dismiss said cause, and that it appear of record.    (Signed)   GEORGE A. STRAUSS."
Witness, J. S. LINDSAY.

The indictment charged the crime to have consisted in falsely making and forging said instrument. And the sufficiency of the indictment, and the correctness of the ruling of the court in overruling the demurrer thereto, must depend upon the determination of the question whether the instrument set out in the indictment was susceptible of being forged or counterfeited, and whether the falsely making and forging of such instrument amounted, in law, to forgery. If this instrument, if genuine, could have the effect to create, increase, discharge or diminish, or in any manner affect the property rights of the person whose name appeared to be signed thereto, and the defendant falsely made and forged such

instrument or procured the same to be done, then such act was within the statute we have quoted and the indictment was sufficient.

The determining point in this question was before this court at the last term; and in *Tecumseh State Bank v. Maddox,* 4 Okla. Rep. 583, 46 Pac. Rep. 563, we there held that an agreement by a contestant to surrender his preferment right and not assert the same, when such preferment right should have been affirmed by the land office, constituted a valid consideration for an assignment of money.

In *Lamb v. Davenport,* 18 Wall. 307, it was held that:

"The right of the United States to dispose of her own property is undisputed, and to make rules by which the lands of the government that are sold or given away is acknowledged; but, subject to these well known principles, parties in possession of the soil might make valid contracts, even concerning the title, predicated upon the hypothesis that they might thereafter lawfully acquire the title, except in cases where congress has imposed restrictions upon such contracts."

In that case the court held that, unless forbidden by some positive law, contracts made by actual settlers upon the public land concerning their possessory rights and concerning the title to be acquired in the future from the United States, are valid as between the parties to the contract, though there be, at the time, no act of congress by which the title may be acquired, and though the government is under no obligations to either of the parties in regard to the title.    (See also *Pelham v. Service,* [Kan. Sup. 36], Pac. Rep. 29; *McCabe v. Caner,* 58 Mich. 182, 35 N. W. 902; *Lapham v. Head,* 21 Kan. 332; *Bell v. Parks,* 18 Kan. 152; *Fesler v. Haas,* 19 Kan. 216.

*Olson v. Orton,* [Minn.], 8 N. W. 878; *Thompson v. Hanson,* [Minn.], 11 N. W. 86; *Kennedy v. Shaw,* 43 Mich. 359; *Sanford v. Huxford,* 32 Mich. 318).

We think that one who contests the right of entry made upon public lands, by another, and who is himself qualified to make entry thereon, and who, if successful in his contest, will have a preference right over all others to make entry of said land, has a property right therein; and that any instrument required to evidence a relinquishment of such right, is of such character, that it may be the subject of forgery.   The above authorities clearly holding that the rights of the contestant in such case are such that an agreement to relinquish the same may constitute a good and valid consideration for a contract, we must hold that, upon this point, the instrument alleged to have been forged was one which, if genuine, could have affected the property rights of said Strauss, and that the indictment which properly charged the making, forging and counterfeiting of such instrument, did properly charge a public offense, and that the court below committed no error in overruling the demurrer to the indictment in this cause.

The other contention of plaintiff in error, which we deem it important to consider, is, that the court erred in its instructions given to the jury.

The indictment was found and returned into court on the eleventh day of November, 1895, and charged the offense to have been committed on the fifteenth day of April, 1891, the indictment being found and returned four years, six months and twenty-six days after the date at which it alleged that the offense was committed.   It, however, contained, in apt words, an averment that on the day of the commission of said offense, the defendant fled

from the Territory of Oklahoma, and has not, since that time, been an inhabitant of or usually resident within said territory, for a period of three years. Section 4952, p. 941, Statutes of Oklahoma, 1893, provides that in all cases other than murder, an indictment for a public offense must be found within three years after its commission; and § 4953, of said statutes, provides that:

"If, when the crime is committed, the defendant be out of the territory, the indictment may be found within the term herein limited after his coming within the territory, and no time during which the defendant is not an inhabitant of or usually resident within the territory, is part of the limitation."

The evident intention of this statute was that as to persons who, being without the territory, should by means or agencies within the territory, or by aiding and abetting others who were in the territory, commit any crime, the statute of limitation should not run until such person came within the territory. And as to all persons committing offenses, whether being at the time of the commission thereof, within or without the territory, the statute of limitation should not run during the time when such offenders were not inhabitants of or usually resident within the territory; and if the defendant in this case was not, during the three years succeeding the offense charged, an inhabitant of or usually resident within the territory, the statute did not run as to him. On the other hand, if during said time he was an inhabitant of or usually resident within the territory, the statute did run and he could not now lawfully be convicted of the offense charged.

Evidence was offered, by both parties, to show the movements and whereabouts of the defendant after the commission of the offense, and as tending to show

whether the defendant was or was not an inhabitant or usually resident within the territory, during the period of the running of the statue of limitation, after the commission of the offense.

The instructions complained of by the plaintiff in error were to the effect that the burden was upon the territory to prove that the defendant was not an inhabitant or usual resident within the territory for a period of three years, after April 15, 1891, and before November 11, 1895; but, that in proving such fact, the territory was not bound to prove it beyond a reasonable doubt; that it was sufficient if that fact was made to appear by a fair preponderance of the evidence. And that residence and inhabitancy, within the meaning of the law, was open public residence as persons ordinarily reside in and inhabit a place, living and moving about in the ordinary way; that if there was flight from the territory by the defendant after the commission of the crime, then, occasional returns within the territory for brief periods, would not make defendant a resident and inhabitant of the territory within the meaning of the law; and that if the jury found from the evidence that the defendant went from the Territory of Oklahoma after the commission of the alleged crime, and then returned and lived secretly or in a concealed manner in the territory, then he would not be a usual resident of the territory within the meaning of the law.

The contention of the defendant is that the court erred in not instructing the jury that it was incumbent upon the territory to establish to the satisfaction of the jury beyond a reasonable doubt that the defendant had been a non-resident of the territory for the time alleged in the indictment, and therefore it was manifest error for the

court to instruct the jury that the territory was not bound to prove, beyond a reasonable doubt, that the defendant was not an inhabitant or usual resident within the territory for said period of time; and in instructing, that it was sufficient, if that fact was made to appear from a fair preponderance of the evidence, and that such instructions were clearly erroneous in defining residence and inhabitancy, within the meaning of the law.

We do not think there was any error, prejudicial to the defendant, in the instruction of the court, defining what was meant by "inhabitant," or "usually resident," as used in the statute; or as to what evidence or facts were competent to establish such inhabitancy or residence. These words have a clear and well defined meaning. Bouvier defines an inhabitant to be "one who has his domicile in a place. One who has an actual fixed residence in a place." The same author defines the word "resident" to mean, "one who has his residence in a place."

Personal presence in a fixed and permanent abode constitutes residence.    (20 Johns. 208; 1 Metc. Mass. 251.) Residence indicates permanency of occupation, as distinct from lodging or boarding or temporary occupation, but does not include so much as domicile, which requires an intention continued with actual residence. (19 Me. 293; 2 Kent. 276).

That place where a man has his true, fixed and permanent home, and to which, whenever he is absent, he has the intention of returning. (10 Mass. 188; 11 La. 175; 9 Ired, 99; 13 Me. 255; 27 Miss. 704).

Residence, inhabitancy and domicile are generally used as synonomous. (10 N. H. 452; 16 N. J. Eq. 107).

Within the meaning of these authorities, the plaintiff

in error must have had an actual, fixed and permanent abode within the territory or the statute of limitation did not run as to any offense committed by him.

Independent of the authorities, the fair, reasonable construction of the statute itself would indicate that it was the intention of the legislature that the defendant should have had within the territory a fixed, permanent and established home where his personal presence might reasonably be known. The legislature, in the first part of the section, excepting from the operation of the statute of limitations, carefully provided that such limitation should not run as to one who was not within the jurisdiction of the territory, and in the latter part of said section excluded from its operation those who were not inhabitants or usually residents in the territory. They certainly did not intend to extend its grace and exemptions to those who were within the territory and who were concealed, or whose presence therein might not readily be known; and hence, we think, that the legislature meant such inhabitancy and residence open, permanent and known as evidences, the presence within the territory of those citizens who fear no accusation of crime and seek no concealment.

The substantial question in this cause is, as to the correctness of the instruction, that it was not incumbent upon the territory to establish by the evidence, beyond a reasonable doubt, that the defendant was not an inhabitant or usually resident within the territory for the period of time in question; and that it was sufficient if the fact of such inhabitancy and residence was made to appear by a preponderence of the evidence.

The general rule of the law in criminal procedure is, that the burden is upon the prosecution to establish, by

evidence to the satisfaction of the jury, beyond a reasonable doubt, the guilt of the accused of the crime charged; that, to do this, the prosecution must establish, by evidence, to the satisfaction of the jury, beyond a reasonable doubt, each and every material element constituting the offense charged. And our statute, § 5201, provides that:

"A defendant in a criminal action is presumed to be innocent until the contrary is proved, and in case of a reasonable doubt as to whether his guilt is satisfactorily shown, he is entitled to be acquitted."

But, is it incumbent upon the prosecution, in addition to establishing, beyond a reasonable doubt, the material and essential elements of the crime, to also negative, by evidence beyond a reasonable doubt, a defense which is extrinsic and of the nature of a confession and avoidance?

There is much confusion and want of harmony among the authorities upon this proposition. In this case the question is clearly presented whether, when the prosecution has established the commission of the offense by the accused, it was also its duty to establish by evidence beyond a reasonable doubt, its right to have the accused punished for such offense, by facts showing that he was not entitled to the benefits of the statute of limitation; or was it the duty of the defendant to establish by facts, to the satisfaction of the jury, his right to exemption from punishment, by virtue of that statute? When the defense consists, not in confession and avoidance, but in the traverse of some essential fact, relied on by the prosecution, and where such fact is an essential element of the offense, the burden of proof is unquestionably upon the prosecution, and it must establish such fact, beyond a reasonable doubt.

In determining upon which party lies the burden of proof and the degree of proof, we think a clear distinction may be drawn between cases where the defense traverse the material elements of the crime and those which are exculpatory or in the nature of confession and avoidance, and keeping clearly in mind this distinction, will aid, materially, in construing apparently conflicting authorities.

The defense of *alabi* is not strictly a defense of confession and avoidance, although frequently treated as such, and by many authorities required to be established by the defendant by a preponderance, of proof. (*State v. Davidson*, 30 Vt. 377; *Fife v. Commonwealth*, 20 Pa. State, 429; *Creed v. People*, 81 Ill. 565; *State v. Hamilton*, 57 Iowa, 596; *State v. Crewson*, 57 Iowa, 588; *Ware v. State*, 67 Ga. 349). On the other hand it is said an *alabi* not only goes to the essence of guilt, but it traverses one of the material averments of the indictment. That the defendant did, then and there, do the particular act charged. And many authorities hold that undoubtedly if the prosecution makes out a case sufficient to secure a verdict of conviction, then the burden is on the defendant to prove his defense; but when his proof is in, then the final question is: Are the essential averments of the indictment proved beyond reasonable doubt, and among these essential averments is the defendant's presence and participation in the act charged. (Wharton's Criminal Evidence, 9th ed. § 333; *Steward v. People*, 42 Mich. 255; *State v. Lewis*, 69 Mo. 92; *Pollard v. State*, 53 Miss. 410; *Howard v. State*, 50 Ind. 190; *Shoemaker v. Territory*, 4 Okla. 118, 43 Pac. Rep. 1059).

The defense of insanity is one also upon which there

has been much conflict in the authorities regarding the shifting of the burden of proof and the degree of proof required to be presented by either party.   And the failure to keep in mind the distinction we have noted between a defense that is a traverse of the elements of the offense and one which confesses and avoids, is perhaps the occasion of the want of uniformity in the authorities.

Mr. Wharton says that three distinct theories have been propounded as to the degree of evidence requisite to justify a conviction on the issue of insanity.   The first is that insanity as a defense must be proved beyond reasonable doubt, and that unless this be done, the jury, the case of the prosecution being otherwise proved, are to convict.   (Wharton's Crim. Ev. § 337, and numerous cases cited.)

The author quotes from Mr. Chief Justice Hornblower of New Jersey, as·follows:

"The proof of insanity at the time of committing the act, ought to be as clear and satisfactory in order to acquit him on the grounds of insanity, as the proof of committing the act ought to be to find the same man guilty." (21 N. J. L. 196).

Second, that the jury are to be governed by the preponderance of the evidence and are not to require insanity to be made out beyond a reasonable doubt.   (Wharton, § 338, citing numerous cases).   And, third, that in such an issue the prosecution must prove sanity beyond a reasonable doubt.   (Wharton, § 340 and cases cited.) And the author adds that the conflict noted arises from the habit of viewing the statutory plea of insanity as a defense of the nature of confession and avoidance, which, however, is not the case.   (Wharton, § 340).

In line with the defenses of *alibi* and insanity, and also marking the distinction relative to the manner and

degree of proof, between defenses which traverse the elements of the crime and those that are exculpatory, is the defense of provocation.    Of this defense, Mr. Wharton says:

"Provocation, also, as a defense which goes to negative premedication and malice, must be regarded as traversing essential ingredient of all offenses which require proof of premeditation and malice.    Hence, while according to the distinction just stated, the burden is on the defendant to prove provocation, in all cases when he opens this defense, yet when the evidence on both sides is closed, he is entitled to a verdict if he has offered proof enough to cast a reasonable doubt on the averment of malice and premeditation, when thus essential.    It is otherwise, however, as we have seen, when the defense does not traverse any averment of the indictment."

Regarding defenses which are extrinsic and do not traverse the material elements of the offense, the rule as to where the burden of proof lies and the degree of proof essential would seem to be clearly distinguished, from those defenses which we have been considering.    These defenses, such as licenses, or authorizations from the state, *autre fois acquit, autre fois convict*, pardon or the defense of compulsion, and the like.    These are extrinsic offenses and as to them there does not appear to be any material conflict in the authorities.    But the authorities, apparently uniformly hold that to establish such defense or make it available, the burden is upon the defendant to satisfy the jury by the preponderance of the evidence.

The rule seems to be well established that where the prosecution makes out such a case as would sustain a verdict of guilty and the defendant offers evidence, the burden is on him to make out the defense whatever it may

be that he presents. He becomes the *actor*, and the duty is on him to make good by proof the point he asserts. When he asserts a defense, that merely traverses the elements of the offense charged, it is sufficient for him, is he raises a reasonable doubt as to the defense he advances; but, where his defense is extrinsic as of confession and avoidance, it is not sufficient that his proof may raise a reasonable doubt, but he must satisfy the jury of the truth of the facts establishing such defense by a preponderance of evidence. (Wharton's Crim. Ev. § 331, and numerous cases there cited).

The rule seems to be well settled, as in New York and many other states, that in homicide cases, that the facts of provocation and necessity, when offered to prove an extrinsic defense, and not to negative the essential averment of the indictment, must be established by a preponderance of testimony, by the rules that obtain in civil actions. (*People v. Schryver*, 42 N. Y. 1 ; *Stokes v. People*, 53 N. Y. 164; *State v. Jones*, 20 W. Va. 764; *Sawyer v. People*, 91 N. Y. 667).

On the other hand, when the defense traversed malice or other material averments, if, in such case, such averment is not on the whole evidence proved beyond reasonable doubt, the charge is not sustained.  (*Com. v. Drum*, 58 Pa. St. 9; *Omara v. Com.*, 75 Penn. St. 424; *State v. Willis*, 63 N. C. 26; *State v. Vincent*, 24 Iowa, 570).

The defense of the statute of limitations traverses no element of the crime charged. It is essentially an extrinsic defense. It does not put in issue either the guilt of the defendant or the existence of any of the essential elements constituting his guilt of the offense charged. He simply asserts that by virtue of an extrinsic condition, not relating to the commission of the

offense, but recognizing its commission, namely, a statute of repose or limitation, he is not now subject to punishment for the crime, which he admits having committed.

We can see no reason why the rule relating to the defenses of license, authorization by the state, *autre fois acquit, autre fois convict,* pardon, provocation or compulsion, should not be the rule as to this defense. In fact, we think the rule applies with more reason and justice to this defense than to the others. It is not inequitable, oppressive or substantially prejudicial to the safe-guards which should surround the defense of one accused of crime, that if his defense does not deny the commission of the acts charged, or traverse any of the material elements of the offense, but is based upon facts wholly extrinsic and peculiarly within his knowledge and more readily susceptible of proof by him than by the prosecution, that he should be held to establish such defense to the reasonable satisfaction of the jury.

In the case at bar, as shown by this record, the prosecution, by the exercise of reasonable diligence, were not able to establish or prove that the defendant had a fixed, definite habitation or residence within the territory. If such fact existed, if the defendant did, in fact, during the disputed time, have a fixed, permanent residence, within the territory, that fact was peculiarly within his knowledge and would be easily susceptible of proof by him; and we think it would be a sound rule only which would require him to make such proof.

We must therefore conclude that if there was error in the instructions given by the court below in this cause, such error was favorable and not prejudicial to the defendant. It follows, there being no substantial errors

in the other assignments, in the record, the judgment of the court below must be affirmed, and it is so ordered.

All the Justices concurring.