## CLAUD CRAIN v. STATE.

No. A.-9632.   July 3, 1940.
(104 P. 2d 450.)

46

J. J. Smith and H. P. Walker, both of Miami, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Jess L. Pullen, Asst. Atty. Gen., and Wm. T. Poteet, Co. Atty., of Miami, for the State.

BAREFOOT, J. The defendant, Claud Crain, was charged in the district court of Ottawa county with the crime of larceny of domestic animals; was tried, convicted, and his punishment assessed by the jury at ten years in the penitentiary. From this judgment and sentence he has appealed.

For reversal of this case defendant contends:

First. The matter of limitations.

Second. The lack of corroborative evidence.

Third. The manifest bias of the jury.

Fourth. Instructions refused.

The first question requires a statement of the history of this case. The defendant, Claud Crain, Fred Rosenthal, Ora Cox, and Paul McHorney, were all residents of the State of Missouri. The evidence revealed that on the night of September 12, 1934, they came from Missouri to Ottawa county, Okla. and entered the pasture of Henry Byard, and stole therefrom four mules, the personal property of the said Henry Byard. After loading the mules into a truck belonging to Fred Rosenthal they started to St. Louis, Mo., where the mules were to be disposed of. After crossing the Oklahoma line the truck turned over, but a wrecker was secured, and the next night they proceeded on their way. Fred Rosenthal, Ora Cox and Paul McHorney, were apprehended by the officers of the Highway Patrol, near Springfield, Mo., who had been notified of the theft. They were returned to Ottawa county, Okla.,

by the sheriff of that county, who went to Springfield, Mo., for them. The mules were recovered.

On the 13th day of September, 1934, a complaint was filed in the office of John H. Venable, county judge of Ottawa county, sitting as an examining magistrate, against "Fred Rosenthall, John Doe, Richard Doe, and Richard Roe", whose true names were unknown, and a warrant was issued thereon and placed in the hands of Dee T. Watters, sheriff of Ottawa county. On September 24, 1934, as shown by the transcript of the examining magistrate, "the sheriff of Ottawa county, State of Oklahoma, brings Fred Rosenthall, John Doe and Richard Roe * * * and thereupon Fred Rosenthall informed the court that his true name is Fred Rosenthal, and John Doe says his true name is Paul McHorney, and Richard Roe says his true name is Ora Cox". The transcript then recites, "and Richard Doe says his true name is Claud Crain". However, it is afterwards admitted that this last statement is incorrect, and that the defendant, Claud Crain, had at that time not been apprehended, and was not present, and never appeared in the courts of Ottawa county until the 29th day of August, 1938. The transcript further recites:

"It is therefore ordered that the county attorney amend the complaint to show the correct and true names of the defendants, and it is further ordered that the prosecution proceed under the true names of the defendants."

The record then reveals that the defendants, Fred Rosenthal, Paul McHorney, and Ora Cox, waived preliminary examination and were bound over to the district court of Ottawa county. Each of these three defendants was afterwards sentenced to the penitentiary and served this sentence upon the above charges.

During the month of August, 1938, the defendant, Claud Crain, was apprehended and arrested in the State

of California. He was returned to the State of Oklahoma by the sheriff of Ottawa county, Walter L. Young. On the 29th day of August, 1938, the county attorney of Ottawa county filed an amended complaint before John H. Venable, county judge, of Ottawa county, sitting as an examining magistrate, charging the defendant, Claud Crain, with the larceny of the four mules as above described, on the 12th day of September, 1934. A warrant of arrest was issued on this amended complaint and placed in the hands of the sheriff of Ottawa county. The transcript of the examining magistrate reveals that defendant was brought before him after the original complaint was amended as aforesaid, and that after having a preliminary examination on the 8th day of September, 1938, defendant was held for his appearance in the district court, and afterwards an information was filed in the district court, and defendant was tried and convicted, as heretofore stated. It may be here noted that the record revealed that Fred Rosenthal, at the time of his arraignment before the county judge in September, 1934, informed him of the true name of the defendant, Claud Crain, and that his true name did not appear in the records of this case until the amended complaint was filed on the 29th day of August, 1938, as aforesaid.

Under the above facts it is contended by defendant that he was not charged within three years, and that his prosecution is therefore barred by the statute of limitations. It is provided by Oklahoma Statutes 1931, sections 2724, 2725, and 2726; O. S. A., title 22, secs. 151, 152, and 153, as follows:

"There is no limitation of time within which a prosecution for murder, the embezzlement of public moneys, and the falsification of public records must be commenced. Prosecution for murder may be commenced at any time after the death of the person killed, and for the embezzle-

ment of public money or the falsification of public records, at any time after the discovery of the crime."

"In all other cases a prosecution for a public offense must be commenced within three years after its commission."

"If when the offense is committed the defendant be out of the state, the prosecution may be commenced within the term herein limited after his coming within the state, and no time during which the defendant is not an inhabitant of or usually resident within the state, is part of the limitation."

It is contended by defendant that the last section of the statute only applies to a person who is out of the state at the time of the commission of the offense, and does not apply to one who was within the state at the time of the commission thereof. This contention is based upon the case of State v. Clemens, 40 Mont. 567, 107 P. 896. The Supreme Court of Montana had before it a statute almost identical with the Oklahoma statute above quoted. This case was a misdemeanor, and we have carefully read it, and cannot approve of the reasoning of the court, and the construction placed upon the statute therein. It is in direct conflict with the construction placed upon the Oklahoma statute by the Territorial Supreme Court in the case of Coleman v. Territory, 5 Okla. 201, 47 P. 1079, 1080. In this case Judge Tarsney analyzed this statute, and held that the first part of the statute referred to persons, who, "being without the territory", and that the second part of the statute referred to persons who were within the state at the date of the commission of the offense, but who were not inhabitants of, or usually residents within the state, during the time of the running of the statute of limitations. The court said:

"The evident intention of this statute was that as to persons who, being without the territory, should, by means

or agencies within the territory, or by aiding and abetting others who were in the territory, commit any crime, the statute of limitations should not run until such person came within the territory. And as to all persons committing offenses, whether being at the time of the commission thereof within or without the territory, the statute of limitations should not run during the time when such offenders were not inhabitants of, or usually resident within, the territory; and if the defendant in this case was not, during the three years succeeding the offense charged, an inhabitant of, or usually resident within, the territory, the statute did not run as to him. On the other hand, if during said time he was an inhabitant of, or usually resident within, the territory, the statute did run, and he could not now lawfully be convicted of the offense charged. * * *

"Within the meaning of these authorities, the plaintiff in error must have had an actual fixed and permanent abode within the territory, or the statute of limitation did not run as to any offense committed by him. Independent of the authorities, the fair, reasonable construction of the statute itself would indicate that it was the intention of the Legislature that the defendant should have had within the territory a fixed, permanent, and established home, where his personal presence might reasonably be known. The Legislature, in the first part of the section, excepting from the operation of the statute of limitations, carefully provided that such limitation should not run as to one who was not within the jurisdiction of the territory, and, in the latter part of said section, excluded from its operation those who were not inhabitants or usually resident in the territory. They certainly did not intend to extend its grace and exemptions to those who were within the territory, and who were concealed, or whose presence therein might not readily be known; and hence we think that the Legislature meant such inhabitancy and residence, open, permanent, and known, as evidences the presence within the territory of those citizens who fear no accusation of crime and seek no concealment."

In that case there was a question of fact as to whether the defendant resided in this state, or was present in the state after the commission of the offense. This question was by the instructions of the court submitted to the jury. In the instant case the defendant never at any time resided in this state. The testimony offered by defendant himself, and among whom were members of his own family, showed that he was a resident of Missouri in 1934, and that afterwards he was a resident of the state of California, where he was at the time of his arrest.

To construe the statute above quoted as contended by defendant, one who was a nonresident of this state, and who came here and committed a crime, and so concealed himself until the statute of limitations run, could not be charged with the crime. We cannot place such construction on this statute.

In the case of State v. Fulkerson, 16 Okla. Cr. 250, 182 P. 725, 729, cited by defendant, it will be noted that the court said:

"It must be fully understood that the decision in this case has no bearing whatever upon the commencement of prosecutions for crimes committed on and after the date of the taking effect of Revised Laws 1910."

In the case of Jarrett v. State, 49 Okla. Cr. 162, 292 P. 888, 889, this court has in a very similar case to the one at bar held as follows:

"A prosecution within the meaning of sections 2441 and 2442, Comp. St. 1921, 22 Okla. St. Ann. §§ 151, 152, is 'commenced' at the time the preliminary complaint or information is filed with a magistrate in good faith and a warrant issued thereon. It is not essential that the warrant shall be served in order that the prosecution be commenced.

"When a prosecution for a public offense has been commenced by filing a preliminary complaint or informa-

tion in good faith and a warrant is issued thereon, but the accused does not come into the custody of the state until after the expiration of the three year period, the state may proceed on the original preliminary complaint or may file another charging the identical offense."

In this case the court refers to the case of Ex parte Broadhead, 74 Kan. 401, 86 P. 458, cited by defendant, and says:

"In that case, however, the sheriff there knew where the defendant was but, on direction of the county attorney, returned the warrant 'not found.' The Kansas court holds this is an abandonment of the prosecution. The Broadhead Case is modified by the later case of State v. White, 76 Kan. 654, 92 P. 829, 14 L.R.A. (N.S.) 556."

It also refers to the case of Davenport v. State, 20 Okla. Cr. 253, 202 P. 18, decided by this court, and especially with reference to that portion of the opinion that held that there must be a "continuous following up, through instrumentalities created by law, of a person accused of a public offense with a steady and fixed purpose of reaching a judicial determination of the guilt or innocence of the accused". And the manner of following up as announced in that case was contrary to the general rule, citing 8 R.C.L., sec. 111; 16 C.J. sec. 355; State v. White, supra; State v. Disbrow, 130 Iowa, 19, 106 N.W. 263, 8 Ann.Cas. 190.

The court then says:

"If the rule here contended for is sound, then an offender for any crime less than murder, if he can successfully conceal himself and avoid arrest for three years, is free from prosecution. The officers of the state may be ever so diligent in attempting to serve the warrant of arrest, but if the offender outwit them no prosecution will lie. When the action was commenced in September, 1924, by filing a preliminary complaint with the county judge, and the issuing the warrant thereon in good faith, the

fact that the sheriff was unable to find defendant to serve the warrant does not make the commencement of the prosecution any less a fact. When defendant came into the custody of the state for prosecution for the offense charged in Kay county, the state might have proceeded with the original preliminary complaint, or it might have filed another preliminary complaint with the county judge so long as the offense charged is identical".

See, also, Hicks v. State, 54 Okla. Cr. 431, 23 P.2d 219; Davenport v. State, 20 Okla. Cr. 253, 202 P. 18.

It is next contended that the state relied for a conviction upon the testimony of Fred Rosenthal, who according to his own testimony was and is an accomplice, and that his evidence was not corroborated. The record, in addition to what has heretofore been stated, revealed that the sheriff of Ottawa county, and the county attorney, after the defendant had been brought back from California, went to Iowa and made arrangements for the witness, Fred Rosenthal, to come to Ottawa county and testify at the preliminary hearing of the defendant. It may be gathered from the record that the witness had a case pending against him in Delaware county and that the county attorney agreed to look into his case in Delaware county, and probably render him assistance in that county looking to the dismissal of his case. However, the witness testified that he returned and testified voluntarily, his expenses being paid by Ottawa county. He remained in jail in Ottawa county during the time he was there. His evidence was that the defendant Claud Crain was the master mind in the stealing of mules and horses, and carrying them to St. Louis for sale. That he owned a truck, and hauled them, but that the defendant located them, and made the arrangements for sale and disposed of them in St. Louis. He testified to several occasions when mules and horses were stolen in Missouri and Oklahoma under

these conditions. He testified that defendant was present when the mules were stolen in Ottawa county in the instant case. That he helped locate the mules in Mr. Byard's pasture and helped load them. That he was driving a black Chevrolet coupe. That he was present when the truck turned over, and that the defendant went to Miami and secured a wrecker to fix the car, and that defendant drove ahead of the truck after they left Springfield, Mo., and that when they were apprehended defendant disappeared, and he had not seen him until the time of the preliminary examination.

The contention of the defendant is that his evidence is not corroborated. This question has been before this court on many occasions. It is not necessary to here cite those cases. In the case of Wilkins v. State, 70 Okla. Cr. 1, 104 P.2d 289, we cite many of the late cases bearing upon this question, and the rule of law which has been followed in this state, as follows:

" 'It is not essential that the corroborating evidence shall cover every material point testified to by the accomplice, or be sufficient alone to warrant a verdict of guilty. If the accomplice is corroborated as to some material fact or facts by independent evidence tending to connect the defendant with the commission of the crime, the jury may from that infer that he speaks the truth as to all. Such corroborating evidence, however, must show more than the mere commission of the offense or the circumstances thereof.'

"Also, in the Howerton Case [Howerton v. State, 65 Okla. Cr. 457, 88 P.2d 904], after citing the cases that have held the evidence sufficient and insufficient to corroborate the accomplice, we say (88 P.2d 905):

" 'From these different cases it may be determined that in accordance with certain well defined propositions of law stated in the different opinions, that each case stands or falls on the particular testimony of that case.' "

Applying the rule above announced to the facts in this case, it may be stated that the evidence of four witnesses, together with the circumstances in the case, are relied upon by the state to furnish the corroborating evidence.

Dee T. Watters, who was sheriff of Ottawa county in 1934, testified that he talked with Fred Rosenthal, Paul McHorney, and Ora Cox, after their arrest in 1934, and that each of them told him that Claud Crain, the defendant, would get the stock spotted, and that defendant would take the boys where the stock was and let them out, and they would round them up while Mr. Crain would watch.

Ed Grigsby was an automobile mechanic. He testified that a man came and employed him on the night of September 12, 1934, to repair a truck that had been turned over on the road between Miami and Joplin, at a point near Devil's Promenade; that it was a red Dodge truck with a regular stock body on it; that when he got there two men were there. One that had come after him in a black Chevrolet 1934 coupe and another person. He could not recognize either the defendant or the witness Fred Rosenthal as being these parties. But his evidence corroborated the evidence of the witness Fred Rosenthal, who testified that he and defendant were present, and that defendant went after the man who came to right the truck and put the five quarts of oil in the same, and that he followed this party out there and he was driving a black Chevrolet coupe. The evidence of Paul McHorney, who testified for the defendant, was that neither he nor Ora Cox was present when the truck was being righted, but that they were attending to the hiding of the mules. This evidence clearly corroborates the evidence of the witness Fred Rosenthal.

The other two witnesses, Sheriff Walter L. Young and C. L. Harrah, who went to California, in August, 1938, to return the defendant to Oklahoma, testified that during the trip back to Oklahoma he had a conversation with defendant as follows:

"He told me he didn't have a thing in the world to do with the stealing of the mules, and didn't know a thing about the stealing of the mules. The only thing he said he got was a cut on the other end of the line. * * * I think he told me he bought two tires for the truck, either the evening before this happened, or the next morning. I am not positive about that".

Also:

"A. Well, we were talking about the truck they had been hauling the mules in, and Mr. Crain told me he paid for the wrecker to go out. I think he first went to Commerce and couldn't get a wrecker and then came back to Miami and got a wrecker here. Q. Tell how much he paid? A. I understood the boy to say he paid $15. And he said he paid him $21. Paid him $20 and bought a dollar's worth of oil".

The witness C. L. Harrah testified that after they left Los Angeles he heard the defendant make a statement very similar to the one above stated.

We find that the above evidence, under the rule of law heretofore announced, was sufficient corroboration of the witness Fred Rosenthal.

The defendant did not take the witness stand in his own behalf. He introduced a number of witnesses, including a number of members of his family, who testified to his living in Missouri on the Rance farm during the year 1934. To his not going to the city of Springfield during that year, and to his not owning or having the use of a car. He also produced the accomplice, Paul McHorney, who testified he did not know him, and that defendant was not present

at the time the mules were stolen. He also testified to having served two terms in the penitentiary and one term in a reform school. This presented a question for the jury to decide under all the facts and circumstances. These issues were clearly presented to the jury, who saw the witnesses upon the stand, observed their demeanor, and were in a much better position to judge the truth of their testimony than is the appellate court. The issues were fairly presented by the trial court, and under the circumstances their verdict of guilty will not be set aside.

The question of the bias of the jury, as contended by the defendant, is by reason of the fact that the witness Henry Byard had been selected on the panel of jurors at the term at which defendant was tried, and had been associated with the jury panel in the trial of cases prior to the trial of defendant's case, and that when this case was called for trial the court said: "Mr. Byard, you will retire from the place reserved for jurors."

No evidence was offered by defendant to sustain the motion for continuance. Nothing was shown that any member of the jury panel were biased or prejudiced against the defendant or that they could not give him a fair and impartial trial. Under the facts presented we find no error in the court overruling the motion for continuance filed herein.

It is next contended that the court erred in refusing to give two requested instructions; the first of which was for the court to direct a verdict of not guilty. From what has been heretofore stated there was no error in refusing this request.

The second requested instruction was to the effect that before the defendant could be convicted the evidence of the witness Fred Rosenthal "must be corroborated by

other testimony on every material point in the case". As heretofore noted, this is not the law in this state. It is further contended that the court erred in not giving an instruction upon circumstantial evidence. The facts in this case show that the state did not rely wholly upon circumstantial evidence for a conviction. We have often held that where the state did not rely wholly upon circumstantial evidence it was not error for the court to fail to instruct thereon. From an examination of the facts, and especially of the defense presented by defendant, it was unnecessary to instruct the jury upon the question of circumstantial evidence.

The court instructed the jury as a matter of law that the witness Fred Rosenthal was an accomplice, and that it was necessary that his evidence be corroborated in a manner necessary to connect the defendant with the commission of the offense, and that the corroboration was not sufficient if it merely showed the commission of the offense, or the circumstances thereof. This was proper. The instructions fully presented the law of the case and were as fair to the defendant as could be expected under the facts.

In the instant case, we have held that the court did not err in overruling the motion for continuance filed in this case by reason of the fact that the prosecuting witness was a member of the jury panel, and had associated with the jury in the trial of cases for a week prior to the trial of defendant's case.

The jury assessed the extreme penalty provided by the law. It is true that the facts revealed that this defendant was engaged in the horse and mule stealing business, and the jury may have been warranted in assessing the extreme punishment.

The record reveals that the witness Fred Rosenthal was given a term of five years in the penitentiary. It does not reveal the punishment that was given the other two parties, but they were not in the penitentiary at the time of this trial, having served their sentences.

Viewing this case from the principle of doing justice to the state and to the defendant, we have come to the conclusion that this judgment should be modified from ten years in the penitentiary to seven years. The district court did not have the authority to do this where the punishment had been assessed by the jury, but this court has that power, and we believe that the ends of justice demand this modification.

It is, therefore, ordered that the judgment and sentence of the district court of Ottawa county be modified from 10 years in the penitentiary to 7 years in the penitentiary, and as so modified is affirmed.

DOYLE, P. J., and JONES, J., concur.