## JAMES OSBORN v. STATE.

No. A-10799. March 17, 1948.

(194 P. 2d 176.)

John L. Dunn and John L. Ward, Jr., both of Tulsa, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

JONES, J.   The defendant was charged by information filed in the district court of Kay county on April 6, 1946, with the crime of murder allegedly committed on March 18, 1929; was tried, convicted of manslaughter in

the first degree, and pursuant to the verdict of the jury was sentenced to serve 25 years in the State Penitentiary.

For a reversal of this case, it is first contended that the evidence is not sufficient to sustain the conviction. To properly discuss this question, a short statement of the evidence will be given.

The evidence of the state showed that one George Stanford was living on the outskirts of the city of New-kirk in Kay county, Okla., in the month of March, 1929. He was last seen alive by the members of his family about 6:00 p. m. on March 18, 1929. His general physical condition at that time was good. Early the next morning he was found lying in the yard of his residence on his face, with his hands spread out with a 38 caliber Smith and Wesson pistol near his right hand. The gun was fully loaded. An examination showed that it had not been recently fired. There was a pool of blood under the body of the deceased. A further examination disclosed that a bullet from a 22 caliber gun had entered his body in the chest and had not quite penetrated the body to where it was easily extracted. There were no other marks or scratches visible on the body of the deceased, but the evidence showed that the gunshot wound was the cause of his death. On cross-examination of the officers by counsel for defendant, it was shown that the deceased was engaged in the illicit whisky traffic. Three empty 22 caliber shells were found in front of the house of the deceased within a radius of six feet of each other. A bullet fired from a 22 caliber gun had lodged in the door of the house of deceased and was imbedded about one-half inch.

The sheriff of Kay county testified that he was notified in the month of January, 1946, that the defendant

had been arrested in Phoenix, Ariz., and had given a statement to an agent of the Federal Bureau of Investigation in which he confessed to having killed the deceased Stanford in Newkirk in 1929. The sheriff, pursuant to the call from Phoenix, went to Phoenix, Ariz., and returned the defendant to Newkirk. At Phoenix, Ariz., the sheriff was given a long typewritten statement by the authorities there which was allegedly signed by the defendant, detailing the facts surrounding the death of the deceased. This statement was offered in evidence by the county attorney, but upon objection being interposed by counsel for defendant that it was hearsay, the objection was sustained. However, the sheriff testified that on the return trip to Newkirk, he discussed the alleged crime with the defendant in which the defendant said that he and Barney Buchanan were in Bell Plain, Kan., and decided to go to Wichita and get a couple of guns and highjack George Stanford who was a whisky dealer in Newkirk. That in accordance with their plans, they drove to Wichita, got two 22 caliber pistols, one an automatic and the other a single shot. That they then hitchhiked to Oxford, Kan., where they stole an automobile and drove it to Newkirk. The defendant Osborn and Buchanan each had a pistol when they went to Stanford's house. A conversation occurred between Stanford and Buchanan, and the defendant heard a shot and saw Stanford walking back toward his house. That Buchanan jumped into the automobile and they left Newkirk in a hurry. That they abandoned the car which they had stolen and hid their pistols.

The county attorney also placed a witness on the stand who identified a written statement taken from the defendant in question and answer form which was subscribed and sworn to by the defendant before the deputy

court clerk of Kay county. In this written statement, the defendant, among other things, swore that he was a brother-in-law to Barney Buchanan. That in the early part of 1929, he and Buchanan were in Bell Plain, Kan.; that they were acquainted with a bootlegger living in Newkirk by the name of George Stanford. That they had bought liquor from him. That he and Buchanan had a conversation in which they decided on the morning of March 18, 1929, to go to Newkirk and highjack the deceased, Stanford. That they hitchhiked to Wichita, Kan., where Buchanan obtained two 22 caliber pistols. That they then caught a ride to Oxford, Kan., where Buchanan stole an automobile. That they drove the automobile to Newkirk to the house of deceased, which was out in the northeast part of town. That the house faced south. That it was after dark when they arrived. That Buchanan hollered for Stanford and he came out. That Buchanan told him he wanted some whisky. That Stanford went in the house and then came out again. That while Stanford was in the house, Buchanan got over on the edge of the seat next to the house. That the door of the automobile was open. That a conversation occurred between Buchanan and deceased and a shot was fired by Buchanan. That they then drove away in a hurry and returned to Bell Plain, Kan., where they borrowed the car of defendant's mother, took the stolen car back to Udall and abandoned it and returned to Bell Plain, Kan. That the guns were hidden in a hay stack. That later the guns were returned to the house of Buchanan's brother in Wichita where he had borrowed them. That he first learned of the death of Stanford when he read it in the paper. That he mentioned it to Buchanan and Buchanan told him to shut up and not say anything about it. That shortly after that he left for California.

After the state had rested, the defendant interposed a demurrer to the evidence, which was overruled. The defendant then rested without offering any evidence in his own behalf.

In Gorum v. State, 60 Okla. Cr. 248, 63 P. 2d 765, it is held:

"In every criminal prosecution it devolves upon the state to prove, first, the corpus delicti; second, that the crime charged was committed by the accused.

"The 'corpus delicti' means, when applied to any particular offense, the actual commission by some one of the particular offense charged.

"The corpus delicti may be established without showing that the offense charged was committed by the accused.

"An extrajudicial confession of the defendant is not sufficient to warrant his conviction without additional proof that the crime charged has been committed. There must be, in addition to the confession, proof of the corpus delicti, and, where the corpus delicti is established by independent evidence, a conviction based upon the defendant's voluntary confession is warranted."

In Edwards v. State, 46 Okla. Cr. 77, 288 P. 359, this court stated:

"Where a dead body is found with marks of violence upon it, or other circumstances that indicate that deceased came to his or her death by unnatural or violent means, proof of such fact, independent of defendant's confession, establishes the corpus delicti in a murder case.

"The judgment in a murder case will not be reversed on appeal as not sustained by the evidence, unless there is no substantial evidence tending to show the guilt of the defendant, or unless it fails so far to support the verdict that the necessary inference is that the jury acted

from partiality or prejudice, or was controlled by undue influence. * * *

"In a trial for murder, the question of whether the alleged confession of the defendant was voluntary was for the jury. Where the voluntary nature of the confession was submitted to the jury under proper instructions, a verdict against the defendant is conclusive on the issue.

"An extrajudicial confession of the defendant is not sufficient to warrant his conviction without additional proof that the crime charged has been committed. There must be, in addition to the confession, proof of the corpus delicti, and, where the corpus delicti is established by independent evidence, a conviction based upon the defendant's voluntary confession is warranted."

See, also, Brown v. State, 9 Okla. Cr. 382, 132 P. 359; Choate v. State, 12 Okla. Cr. 560, 160 P. 34, L. R. A. 1917A, 1287.

In Choate v. State, supra, this court stated:

"A conviction cannot be had upon a defendant's extrajudicial admissions alone, unless the state proves in some way the corpus delicti, independent of the defendant's admission. Direct and positive proof is not essential to establish the corpus delicti, but it may be proved by circumstantial evidence. And when it is proved by circumstantial evidence, the question should be submitted to the jury along with the other questions of fact in the case, as to whether or not the state has established the corpus delicti beyond a reasonable doubt.

"(a) The danger which this rule is supposed to guard against is greatly exaggerated in common thought. Yet there are rare instances of morbid minds that need to be protected by this rule against their own perversity and morbid imagination.

"(b) To prove the corpus delicti is a simple matter. If a dead body is found with marks of violence upon it,

or other circumstances that indicate that deceased came to his or her death by unnatural or violent means, proof of such fact, independent of defendant's confession, establishes the corpus delicti in a murder case. * * *"

In the instant case, the state established by evidence independent of confession of the defendant that the deceased came to his death by reason of a gunshot wound inflicted upon him by a 22 caliber bullet, the night of March 18, 1929. In accordance with the authorities above cited, where the corpus delicti has been established by independent evidence, then the confession of the defendant to having committed the crime is sufficient to sustain a judgment of conviction. Under the confession of the accused, he and Buchanan schemed together to commit the felony of robbery. During the robbery, the deceased was shot. The defendant, as well as Buchanan, is guilty of felonious homicide. McDonald v. State, 54 Okla. Cr. 161, 15 P. 2d 1092.

It is next contended that the court erred in admitting a certified copy of the death certificate in evidence over the objection of defendant that said certificate was hearsay evidence.

The proof of the state showed that the Doctor who made the death certificate was deceased. The certificate had been duly filed with the Bureau of Vital Statistics in Oklahoma City, and was a part of their records.

By statute, 63 O. S. 1941 § 581, it is provided that such a certified copy of the record of death registered under the provisions of the act "shall be prima facie evidence in all courts and places of the facts therein stated."

See, also, National Benevolent Society v. Russell, 173 Okla. 331, 48 P. 2d 1047, wherein it is held:

"In action on life insurance certificate, copy of insured's death record certified by State Registrar is competent prima facie evidence of what caused insured's death (St. 1931, §§ 321, 4514, 4516 [12 O. S. 1941 § 486, 63 O. S. 1941 §§ 579, 580])."

Counsel for the defendant next insist that the verdict finding defendant guilty of manslaughter in the first degree cannot be sustained for the reason that the statute of limitations had run against any crime except murder, three years having elapsed since the commission of the offense of manslaughter and there being no evidence on the part of the state that tolled the statute of limitations. 22 O. S. 1941 §§ 151, 152 and 153.

The general rule seems to be that where one is charged with an offense which is not barred by limitation, but is convicted of a lesser included offense which is so barred, that he is entitled to a discharge. 22 C. J. S., Criminal Law, § 225.

However, the authorities are not all in accord on this rule and this court has not yet had occasion to decide this point. In order to dispose of this contention of defendant, it is unnecessary to decide this question. That question will be decided when a record is before us which affirmatively shows that the included or lesser offense than the one charged is barred by the statute of limitations.

It is provided by statute:

"If when the offense is committed the defendant be out of the State, the prosecution may be commenced within the term herein limited after his coming within the state, and no time during which the defendant is not an inhabitant of or usually resident within the State, is part of the limitation. R. L. 1910, § 5626." 22 O. S. 1941 § 153.

In construing and applying this section of the statute, this court has consistently held that the burden is not upon the state to show by the evidence that the defendant was not an inhabitant or usually resident within the state for a period of time which would toll the statute of limitations. Coleman v. Territory, 5 Okla. 201, 47 P. 1079; Rea v. State, 3 Okla. Cr. 281, 105 P. 386, 106 P. 982; Davenport v. State, 20 Okla. Cr. 253, 202 P. 18; Crain v. State, 70 Okla. Cr. 45, 104 P. 2d 450.

In Coleman v. Territory, supra, Justice Tarsney of the Supreme Court of Oklahoma Territory cited and discussed all of the leading American cases and text books on this subject of limitation, and came to the conclusion as stated in his opinion [5 Okla. 201, 47 P. 1081]:

"In this case the question is clearly presented whether, when the prosecution has established the commission of the offense by the accused, it was also its duty to establish by evidence, beyond a reasonable doubt, its right to have the accused punished for such offense, by facts showing that he was not entitled to the benefits of the statute of limitation, or was it the duty of the defendant to establish by facts, to the satisfaction of the jury, his right to exemption from punishment by virtue of that statute? When the defense consists, not in confession and avoidance, but in the traverse of some essential fact relied on by the prosecution, and where such fact is an essential element of the offense, the burden of proof is unquestionably upon the prosecution, and it must establish such fact beyond a reasonable doubt. In determining upon which party lies the burden of proof and the degree of proof, we think a clear distinction may be drawn between cases where the defense traverses the material elements of the crime, and those which are exculpatory, or in the nature of confession and avoidance, and keeping clearly in mind this distinction will aid materially in construing apparently, conflicting authorities. * * * The defense of the statute of limitations traverses no element

of the crime charged. It is essentially an extrinsic defense. It does not put in issue either the guilt of the defendant, or the existence of any of the essential elements constituting his guilt of the offense charged. He simply asserts that by virtue of an extrinsic condition, not relating to the commission of the offense, but recognizing its commission, namely, a statute of repose or limitation, he is not now subject to punishment for the crime which he admits having committed. We can see no reason why the rule relating to the defense of license, authorization by the state, autrefois acquit, autrefois convict, pardon, provocation, or compulsion should not be the rule as to this defense. In fact, we think the rule applies with more reason and justice to this defense than to the others. It is not inequitable, oppressive, or substantially prejudicial to the safeguards which should surround the defense of one accused of crime, that if his defense does not deny the commission of the acts charged, or traverse any of the material elements of the offense, but is based upon facts wholly extrinsic, and peculiarly within his knowledge, and more readily susceptible to proof by him than by the prosecution, he should be held to establish such defense to the reasonable satisfaction of the jury. In the case at bar, as shown by this record, the prosecution. by the exercise of reasonable diligence, were not able to establish or prove that the defendant had a fixed, definite, habitation or residence within the territory. If such fact existed,—if the defendant did, in fact, during the disputed time, have a fixed, permanent residence within the territory,—that fact was peculiarly within his knowledge, and would be easily susceptible of proof by him; and we think it would be a sound rule only which would require him to make such proof."

In Rea v. State, supra [3 Okla. Cr. 281, 105 P. 386], this court held:

"The statute of limitations does not negative a single element of the crime with which a defendant may be charged. It does not put in issue the guilt of the defendant. It therefore is not necessary for the prosecution

to prove beyond a reasonable doubt that the offense committed is not barred by the statute of limitations."

In Davenport v. State, supra, this court stated [20 Okla. Cr. 253, 202 P. 25]:

"It is well settled that, where the statute of limitations is relied upon for a defense in a criminal action, the burden is upon the defendant to prove by a preponderance of the evidence any matter showing that the statute of limitations is not tolled."

In Crain v. State, supra, [70 Okla. Cr. 45, 104 P. 2d 454], Judge Barefoot of this court, after reviewing the authorities, cited with approval the cases of Coleman v. Territory and Davenport v. State, supra, and stated:

"If the rule here contended for is sound, then an offender for any crime less than murder, if he can successfully conceal himself and avoid arrest for three years, is free from prosecution."

In the instant case, the defendant offered no evidence but rests his proposition solely upon the ground that the state failed to prove that the prosecution, in so far as manslaughter was concerned, was not barred by limitations. We think the ruling of Judge Tarsney in disposing of a similar contention applies forcefully to the conclusion which we have reached in this case. If the defendant during the disputed time was an inhabitant or usually resident within the state, such fact was peculiarly within his knowledge and would be easily susceptible of proof by him, and we think it would be a sound rule which would require him to make such proof. It would present an almost insurmountable obstacle to the state to require that the state should show the whereabouts of the accused during all of the time from the date of the crime until his arrest. We do know from the evidence in the record that the defendant, at the time of the commission of the alleged crime, lived in Kansas. That after the

crime was committed, he went to California, and at the time of his arrest he was in Phoenix, Arizona. As to whether the defendant was outside of the state so as to toll the statute of limitations was not readily susceptible of proof by the state. Such fact was locked in the mind of the accused. He alone knew his whereabouts during the long period from the time of the homicide until his arrest.

By reason of the foregoing authorities, it is evident that the court did not err under the evidence before it in submitting the issue of manslaughter in the first degree to the jury in so far as the question of limitation is concerned.

The defendant next contends that the court erred in refusing to give defendant's requested instruction No. 2, which was an instruction on circumstantial evidence. The instruction requested by the defendant was an accurate statement of the law on circumstantial evidence; but we find that the court, in instruction No. 19, gave an instruction on circumstantial evidence which, although not in the exact language of the requested instruction, was substantially the same and was a correct statement of the law.

The same may be said of defendant's requested instruction No. 1. We think it contained a substantial statement of the law, but the record discloses that the trial court very carefully gave a complete and fair statement of the law applicable to the evidence in instructions 12, 13, 14, 15, 16 and 17.

There is no material error. The judgment and sentence of the district court of Kay county is accordingly affirmed.

BRETT, J., concurs. BAREFOOT, P. J., dissents.