Shelby Leon DOGGETT, Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A–13107.

Court of Criminal Appeals of Oklahoma.

April 25, 1962.

Githen K. Rhoads, Lawton, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., Bill Hensley, County Atty., Comanche County, Lawton, for defendant in error.

BRETT, Judge.

This is an appeal by Shelby Leon Doggett, defendant below, from a judgment and sentence of death.

The case was instituted by information in the Superior Court of Comanche County, Oklahoma for the crime of the murder of Jimmy Lee Lanman, allegedly committed on August 19, 1960, in said county and state.

The death of Lanman was alleged to have been effected by premeditated design on the part of this defendant and his accomplice, Ronald G. Lockwood, while acting conjointly to carry out a robbery, by discharging into the body of Lanman bullets from an automatic pistol.

The defendant was tried by a jury, convicted and his penalty fixed at death. Judgment and sentence was entered accordingly, from which this appeal has been perfected.

No briefs were filed in this case, but Githen K. Rhoads, court-appointed counsel, appeared for the defendant and argued the record in behalf of his client. The State was represented by the Attorney General, and Mr. Bill Hensley, county attorney of Comanche County.

As brief a résumé of the facts as the situation will permit will be made.

It appears from Doggett's confession, signed and witnessed September 6, 1960 in Lawton, after complete and proper warning and advice, that Shelby Leon Doggett and Ronald G. Lockwood met in Lawton, Oklahoma, in a cafe on July 21, 1959. Thereafter they met on other occasions, casually. Some time before the fatal date in question, Doggett purchased a .25 automatic pistol from a pawnbroker in Lawton. On the evening of August 18, these two men planned to hitchhike to Altoona, Pennsylvania by way of Tuskahoma, Oklahoma, where they would visit friends the defendant Doggett had known in California. Their plan was to go south out of Lawton on Highway 277, pick up highway 70, and go east to Tuskahoma. From that place they were to hitch hike on to Altoona.

The two began this fateful trip at Second and E Streets in Lawton, in front of a cafe, and they saw a man in the cafe cleaning up. They were seen there by this man. Here they waited for from two to two and a half hours, until past midnight. In the early morning of August 19, 1960, a young man, the decedent in this case, Jimmy Lee Lanman, who was a golf professional at Lawton, picked them up in a 1960 Ford Sunliner convertible. Just at the south edge of Lawton Lanman stopped to let them out. At this point the defendant Doggett pulled his pistol, stuck it in Lanman's ear, and told him, "This is no toy. Do as we say and you won't get hurt." He then told Lanman to drive south on Highway 277. Lockwood asked Doggett for his hunting knife, and upon obtaining it he pointed it towards Lanman. He told Lanman, after driving about ten miles south, to drive east off Highway 277 on to a county road. On the way to a desolate spot about two and three-fourths miles down the road, they passed some houses on the highway, mostly on the left or north side of the road. Upon reaching the desolate spot hereinbefore referred to, Lanman was required to stop the car and to remove all of his outer clothing. Then Lockwood tied Lanman's hands behind him with Lanman's belt. Doggett told Lanman to walk back up the road, while Lockwood searched his pants and billfold. While he was walking up the road, where Doggett said he intended to knock him out and tie him up securely, Lanman made a break and ran. Doggett said he shot him in the side of the head, and when Lanman spun around he shot him in the chest. Doggett returned to the car and told Lockwood what he had done, and Lockwood asked if Lanman was dead. There being doubt that he was dead, they returned to the body and found that he was still alive. Whereupon at Lockwood's suggestion, Doggett said, he emptied the remaining shells in the clip into Lanman's chest, thereby making sure of his death. This all occurred, Doggett said, about 3:30 or 4 o'clock in the morning. They then picked the body up and carried it from the road to the south side of the road and dumped it in some weeds and grass about knee deep.

Doggett related that they then drove back to Highway 277, then south to Highway 70, and to a little town on the left side of the highway, where they stopped at a filling station, took Lanman's credit card from his billfold which they had lifted from his clothing, and Doggett signed up for gas in Lanman's name. They then drove on to Tuskahoma, saw their friends, and two days later took off for Altoona, Pennsylvania, using Lanman's credit card for obtaining gas.

It appears from the confession that they visited in and around Altoona, using the credit card for gas and a tire. One time they drove to Cleveland, Ohio, where they sold Lanman's ring and watch, which they took from his person at the scene of the crime. They got $20 for the watch and ring. Lockwood was not old enough to sign the pawn ticket, and Doggett said he signed Lanman's name on the bill of sale. They also obtained some cash on the credit card in this vicinity, he said.

While in Altoona they met a boy by the name of Raymond Sciarillio, who went to Cleveland with them. After they returned from Cleveland, and about 7:30 one night, Sciarillio wrecked the Lanman car just outside the town of Altoona. Sciarillio reported the wreck to the police, and thereafter Doggett went to the police station to check on the car, and was arrested and booked, to determine his identity in relation to the automobile.

Many incidents leading up to the killing as related in the Doggett confession were corroborated. Such as the purchase in Lawton of the .25 automatic pistol. Doggett and Lockwood were seen and identified by the clean-up man, who said they were in front of the cafe before the crime. In Altoona, the credit card and other things belonging to Lanman, such as certificate of registration and title to his automobile, were found in the car. An investigation led

the police to believe that the automobile was stolen from Lanman, one reason being that Doggett's identification card, carrying his picture, was a dead give away, for if he was Doggett pictured on the identification card, he could not be Lanman, named on the credit card and car papers.

A charge of larceny of a motor vehicle was instituted against Doggett and Lockwood. An unusual thing happened on the extradition proceedings against Doggett based upon the theft of the automobile and transportation thereof from Oklahoma to Pennsylvania. Doggett was asked by the presiding judge, John M. Kleper, where the owner of the automobile was. Doggett responded that "he is back in Oklahoma, where I shot him."

Officer Shiffler of the Altoona police department testified that on September 1, 1960 he took the first confession from Doggett, in which he volunteered where he had hidden the gun with which he killed Lanman, and which he had purchased in Lawton from the pawnbroker. The officers on his description found the gun in Altoona, Pennsylvania, hidden just off the street, on a corner lot under some shrubbery, just where Doggett said it would be found. The gun was found by Officer Wegemer of the Altoona police. It was taken to Doggett and identified by him as being the gun used in the killing. This confession was notarized.

Doggett had told the officers there would be four shells in the clip of the gun when it was found, and there were four shells in the gun. The gun was traced back to the Zimmer pawn shop in Lawton, as the one sold to Doggett by the pawnbroker. Officer Paul Boyd of the criminal identification bureau identified the finger prints on the pawnbroker's permanent record of the transaction concerning the purchase of the .25 calibre automatic as being the right thumb print of Doggett.

Investigation at the scene of the crime tallied with the confession of Doggett, and disclosed the dead and somewhat skeletonized body of Lanman where Lockwood and Doggett had placed it on the south side of the road. Investigation disclosed that in the cranium cavity one bullet was found, one found behind the seventh rib, on the left side, and a third behind the ninth rib. The second bullet described on the left, it appears, would have passed through the heart causing instant death. That, undoubtedly, was the bullet fired by Doggett in erasing any possibility of Lanman ever regaining consciousness.

The evidence of the confession was further corroborated by Officer Johnny West who in making extended investigations into this case, testified that on information provided in the confession they found the body approximately ten miles south and three miles east of Lawton. He further said two empty .25 automatic shell cases were found directly across the road north of the body, in the vicinity where the defendant Doggett said he first shot Lanman in the head and chest. The ballistic expert made tests with the shell cases found at the scene of the crime, and he testified they were fired from the gun of the defendant Doggett. He did not so testify concerning the bullets taken from the body, because the body fluids and acids had eaten into the bullets. When the almost completely decomposed body was found, fastened to his wrists was the belt which the defendant described in his confession as being the belt of Lanman, with which they tied Lanman's hands.

The voluntary nature of the confession clearly appears. There were no threats, promises, or duress used to obtain it, and he was warned of his rights, and that it might be used against him. The defendant did not testify or offer any evidence that the confession was involuntary. He wholly defaulted in this regard.

■ This constitutes the salient features of the evidence of the corroboration in this case which, under the law, must necessarily be had as to corpus delicti. Edwards v. State, 46 Okl.Cr. 77, 288 P. 359; Osborn v. State, 86 Okl.Cr. 259, 194 P.2d 176. We have not attempted to recount all of the

corroborating circumstances in the 345-page record, but only so much of the record as is necessary to demonstrate that the evidence of defendant's guilt is overwhelming. There are not even inconsequential conflicts in the State's case, and that is most unusual. Nor is there any evidence of mitigation. This case reveals one of the most premeditated, cold and callous murders that ever came before this court, consummated without the slightest provocation, under such conditions there can be but one result of this appeal, that is an affirmation of the judgment and sentence. Betterton v. State, 17 Okl.Cr. 415, 189 P. 760.

Ordinarily where no briefs are filed, we search only to determine whether there is any judicial or fundamental error, but in this case we have carefully examined the entire record. This case was tried with meticulous care on the part of Mr. Hensley and the court, seeking to accord the defendant all his rights, both constitutional and statutory. Also is counsel for the defendant, Mr. Rhoads, deserving of commendation. He did all that any lawyer could do under the circumstances, and ably argued the case before this court.

It is therefore our opinion that this case must be, and hereby is, affirmed.

The date originally appointed for the execution of the defendant Shelby Leon Doggett having passed pending this appeal, it is ordered, adjudged and decreed by this court that the judgment and sentence of the Superior Court of Comanche County, Oklahoma be carried out by the electrocution of the defendant Shelby Leon Doggett by the Warden of the State Penitentiary at McAlester, Oklahoma, on Friday, the 29th day of June, 1962.

BUSSEY, J., concurs.

NIX, Presiding Judge.

I agree with Judge BRETT'S conclusions in the application of the law in the instant case.